85 F.3d 435
 96 Cal. Daily Op. Serv. 3756, 96 Daily Journal
D.A.R. 6107
UNITED STATES of America, Plaintiff-Appellee,
v.
Lawrence A. HEFFNER, Defendant,
William W. Dean, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lawrence A. HEFFNER, et al., Defendants,
and
W.W. Dean & Associates, Defendant-Appellant,
Lawrence A. Heffner, Defendant.
 Nos. 95-50396, 95-50397.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 7, 1996.
Decided May 28, 1996.
 
 Robert S. Brewer, Jr., Robert Lauchlan, Jr., Knut Johnson, McKenna & Cuneo, San Diego, California, and Michael H. Fish, Nugent & Newnham, San Diego, California, for defendant-appellant William Dean.
 Bruce Castetter, Robert F. DePippo, George C. Aguilar, Assistant United States Attorneys, San Diego, California, for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of California, John S. Rhoades, District Judge, Presiding. D.C. No. CR-95-00069-JSR.
 Before FLOYD R. GIBSON,* JOHN T. NOONAN, Jr., and DAVID R. THOMPSON, Circuit Judges.
 JOHN T. NOONAN, Jr., Circuit Judge:
 
 
 1
 William W. Dean, Jr. (Dean) and W.W. Dean Associates (the Dean Partnership) appeal the denial by the district court of their motion to dismiss their criminal indictment on the grounds of double jeopardy and estoppel. We affirm the holding of the district court that a prior civil proceeding by the Resolution Trust Corporation (the RTC) did not constitute a prosecution by the United States and so did not trigger the Double Jeopardy Clause. We dismiss for lack of jurisdiction the appeal as it relates to estoppel apart from the Double Jeopardy Clause.
 
 FACTS
 
 2
 Understanding of a prior civil suit is necessary for evaluation of the appellants' claim of double jeopardy. On October 25, 1991, the RTC became the receiver of Great American Bank (the Bank). In that capacity it inherited litigation involving Dean, a San Francisco real estate developer, and the Dean Partnership. The case arose out of a development Dean had undertaken. The Bank's real estate subsidiary, Great American Development Co. (GADCO), owned 1,285 acres in Temecula, California, which it proposed to sell for development as a master plan community called Redhawk. In August, 1989, the Dean Partnership offered to purchase Redhawk for $50 million, with $10 million to be paid at closing and the remaining $40 million to be paid according to the terms of a promissory note. The note was secured by a deed of trust covering all of the property, including the Redhawk golf course. GADCO accepted the offer. The sale was carried out on September 28, 1989, with the purchaser being a new partnership, RDHK Ventures, controlled by Dean. Thereafter the deal soured. On June 12, 1991, the Dean Partnership and RDHK Ventures brought suit in the Superior Court of Riverside County against the Bank and GADCO seeking compensatory and punitive damages for actions relating to the Redhawk sale. The Bank and GADCO answered and filed a cross-complaint against the plaintiffs in that case.
 
 
 3
 The cross-complaint asserted eight causes of action against the Dean Partnership and RDHK Ventures. The suit alleged that Dean was the president of the Dean Partnership and the general partner of RDHK Ventures; that Dean had organized the Redhawk Golf Club, which he owned in its entirety and which he used as a device for substituting a financially insolvent corporation as owner of the golf course, causing RDHK Ventures to transfer the golf course to the Redhawk Golf Club without adequate consideration. The suit further alleged that on September 10, 1990, Dean, the Dean Partnership, and RDHK Ventures represented to the Bank that the payment of $8 million due the Bank on September 28, 1990 would be paid on time; that on the basis of these assurances the golf course was reconveyed to RDHK Ventures; that RDHK Ventures failed to make the $8 million payment due on September 28, 1990; and that eventually the golf course was transferred to the Redhawk Golf Club without consideration. The complaint sought recision of the Bank's reconveyance of the golf course because of the representations of the defendants that were either fraudulent or negligent; actual damages of $5 million and punitive damages "in an amount sufficient to punish and make an example" of the defendants; damages of $5 million for the defendants' negligent representations; judicial foreclosure of the golf course and of various other security interests belonging to the Bank; the appointment of a receiver and an injunction; a temporary restraining order and a sequestration order; the imposition of a constructive trust on the Redhawk Golf Club; and money had and received from the secured property.
 
 
 4
 On August 19, 1991, the RTC, as the receiver of the Bank, removed this suit to the federal district court. That court, in March 1992, entered a series of rulings adverse to the RTC. It held that the Bank had been obligated to reconvey the golf course to RDHK Ventures and that the obligation had not been contingent in any way on receiving assurances concerning the ability of RDHK to make the next payment. Accordingly, the district court granted the defendants' motion to strike the requests for judicial foreclosure, for the appointment of a receiver, for the recovery of income, and for imposition of a constructive trust. The motion to strike the counterclaim's request for "punitive damages for negligent misrepresentation" was also granted without leave to amend.
 
 
 5
 The RTC entered an appeal. While the appeal was pending, the parties began to negotiate a settlement, which was executed December 23, 1992 by the RTC as receiver for the Bank, by GADCO, by RDHK Ventures, by the Dean Partnership, and by the Redhawk Golf Club. The settlement granted a release by RTC to the defendants in the suit of all claims whatsoever arising out of the Redhawk transactions, with the exception of "any claims against any former employee" of the Bank or GADCO and with the exception that RTC might commence a civil action against any of the defendants if "any of their respective directors, officers, employees or partners is convicted of a criminal offense arising directly from Redhawk." The settlement included an agreement by the defendants to pay a maximum of $2,500,000 for the reconveyance to RDHK Ventures of a portion of the disputed property. The defendants agreed not to prevent foreclosure by the RTC on the remainder of the property. The settlement was crafted with lawyerly precision. It ran twenty-six pages. It contained an explicit warranty by the parties that "no promise, inducement, representation, or agreement not expressed therein" had been made to them in connection with the agreement.
 
 PROCEEDINGS
 
 6
 On January 25, 1995, a federal grand jury returned the indictment that is the subject of this appeal. The defendants charged were Dean; the Dean Partnership; RDHK Ventures; and Lawrence A. Heffner, Senior Vice President of GADCO. The first and principal count alleged that the four defendants, in violation of 18 U.S.C. § 371, conspired to defraud the Bank by devising and executing a scheme to obtain assets of the Bank by fraud in violation of 18 U.S.C. § 1344; by bribing Heffner in his capacity as an officer of the Bank in violation of 18 U.S.C. § 215; by depriving the Bank of the honest service of Heffner and using the mails to execute the scheme in violation of 18 U.S.C. § 1341 and to take property from the Bank in violation of 18 U.S.C. § 1005. The conspiracy was alleged to have been carried out by Heffner and Dean making an agreement whereby the Dean Partnership would pay Heffner the sum of $10,000 a month for "consulting" with the partnership, all the while that he was an officer of GADCO, and by promising him employment with the Dean Partnership on his eventual resignation from GADCO. From November 27, 1989 to May 14, 1991, Count One charged, Heffner was paid a total of $175,000 for acts benefitting the other defendants contrary to the interest of the Bank and GADCO, who were kept in the dark as to the arrangement.
 
 
 7
 Among the acts charged against Heffner is that he was the primary representative of GADCO in developing Redhawk and that he concealed from GADCO and the Bank a clause which he, at Dean's request, inserted in the agreement for the sale of Redhawk. This clause provided that RDHK Ventures could obtain reconveyance of the golf course, allegedly valued at $10 million, without paying a release price. According to the indictment, this clause materially impaired the Bank's security and was revealed to the Bank only in July 1990 when Heffner disclosed the clause and persuaded the Bank that it was bound to make the reconveyance.
 
 
 8
 Count Two charged Heffner with unlawful receipt of a bribe of $175,000 in violation of 18 U.S.C. § 215(a). Count Three charged Dean, the Dean Partnership and RDHK with making the bribe in violation of 18 U.S.C. § 215(a). Count Four charged all four defendants with bank fraud in executing the scheme to defraud the Bank by false representations in violation of 18 U.S.C. §§ 1344 and 2. Counts Five through Ten charge all four defendants with mail fraud in the mailing of checks and invoices carrying out the bribery of Heffner in violation of 18 U.S.C. §§ 1341 and 2. Count Eleven charged all four defendants with knowingly defrauding the Bank, a federally insured institution and participating in the spoils in violation of 18 U.S.C. §§ 1005 and 2. Count Twelve charged Heffner alone with filing a false tax return in violation of 26 U.S.C. § 7206(1) by concealing the bribe income he had received from the Dean Partnership in 1991. In addition, the indictment sought the criminal forfeiture of all the property received by the defendants as a result of the charged crimes including the Redhawk Golf Course and the $175,000 paid in bribes.
 
 
 9
 Dean and the Dean Partnership moved to dismiss the indictment on the grounds of double jeopardy and estoppel. The district court held: "Defendants' argument ignores the well established principle that the RTC, like the FDIC is empowered to act in two entirely separate and distinct capacities. See FDIC v. Nichols, 885 F.2d 633, 636 (9th Cir.1989) (citing cases); FDIC v. Glickman, 450 F.2d 416, 418 (9th Cir.1971). When the RTC is acting in its capacity as a receiver, its actions are not conduct of the Government for purposes of the Double Jeopardy Clause." The district court further relied on the rejection of a similar argument in United States v. Beszborn, 21 F.3d 62, 64 (5th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 330, 130 L.Ed.2d 288 (1994). The district court also ruled that collateral estoppel did not preclude the present prosecution because the United States had not been a party to the prior civil suit.
 
 
 10
 Dean and the Dean Partnership appeal the rulings of the district court.
 
 ANALYSIS
 Double Jeopardy
 
 11
 We have jurisdiction to hear an interlocutory appeal alleging double jeopardy. United States v. Chick, 61 F.3d 682, 684-85 (9th Cir.1995). For two good reasons Dean and the Dean Partnership cannot prevail on their double jeopardy contention.
 
 
 12
 First. The parties are not the same. Heath v. Alabama, 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985). The RTC in its corporate character as receiver is not the federal sovereign vindicating the criminal law of the United States. As the district court accurately noted, we have already held as much in the context of an evidentiary ruling in FDIC v. Glickman, 450 F.2d 416, 418-19 (9th Cir.1971); and for us, as for the district court, Beszborn is persuasive on the precise question presented here. Beszborn, 21 F.3d at 67-68.
 
 
 13
 The appellants argue that the RTC is defined by statute as "an instrumentality of the United States." 12 U.S.C. § 1441a(b)(1)(A), and that it was because it was so defined that it was enabled to remove the civil suit from the superior court to the district court. 12 U.S.C. § 1441a(b)(4), 12 U.S.C. § 1819(b)(2)(B). But this argument does not get them past the precedents distinguishing the government-created receiver from the sovereign.
 
 
 14
 More persuasively, the appellants attempt to show that the government as prosecutor was identified with the RTC as receiver. They point to the Department of Justice's Financial Institution Fraud Federal Prosecution Manual (1994), which states as to the government's investigation of fraud involving federally-insured institutions: "In practice, RTC investigators are involved initially and throughout the civil litigation, supporting the attorneys and assisting the Federal Bureau of Investigation and U.S. Attorneys in prosecuting individuals." The appellants further note an act of Congress directing the RTC to "compile and publish a report to the Congress on the coordinated pursuit of claims by all Federal financial institution regulatory agencies, including the Department of Justice...." 12 U.S.C. § 1441a(b)(11)(G); the RTC has subpoena power for purpose of carrying out the authority conferred by the statute upon it. See RTC v. Thornton, 41 F.3d 1539 (D.C.Cir.1994).
 
 
 15
 Neither the statutes nor the Department of Justice manual are sufficient to transform the RTC as receiver of a federally insured institution into the federal government prosecuting a violation of the federal criminal law. That the suggestion to the contrary is plausibly advanced points to a danger in mingling civil functions with assistance to a criminal prosecution. We do not think, however, that a fusion of the two has been effected either by Congress or by the Department of Justice. The United States was not a party to this civil case.
 
 
 16
 Second. The cases are not the same. Heath, 474 U.S. at 88, 106 S.Ct. at 437. The RTC as receiver sought recision on the grounds of fraud in representations made to the Bank by Dean, the Dean Partnership and RDHK Ventures. The criminal indictment charges a conspiracy whose heart is the bribery of Heffner to betray his fiduciary responsibilities. The golf course figures in both cases. The crimes charged are entirely distinct from the fraud alleged and settled in the civil suit.
 
 
 17
 Estoppel. The appellants assert an estoppel based on the settlement as to the forfeiture of the golf course. We lack jurisdiction over this portion of their appeal. The district court's denial of their motion does not deny "an important right that would be 'lost, probably irreparably,' " and so review must await final judgment. Chick, 61 F.3d at 685 n. 1.
 
 
 18
 Accordingly, the judgment of the district court as to the motion based on double jeopardy is AFFIRMED; the appeal as it relates to estoppel relative to forfeiture is DISMISSED.
 
 
 
 *
 The Honorable Floyd R. Gibson, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation