142 F.3d 1113
 98 Cal. Daily Op. Serv. 3051, 98 Daily Journal
D.A.R. 4217
UNITED STATES of America, Plaintiff-Appellant,
v.
Robert S. ELY, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert S. ELY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ralph E. WHITMORE, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
Ralph E. WHITMORE, Jr., Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
William S. SWAIN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
H. Derrell SMITH, Defendant-Appellant.
 Nos. 96-30070, 96-30072 to 96-30075, and 96-30130.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 17, 1997.
Decided Aug. 28, 1997.
Amended April 23, 1998.
 
 Joseph W. Bottini, Asst. U.S. Atty., Anchorage, AK, for U.S.
 William Bankston, Bankston, McCollum, Anchorage, AK, Walter Share, Seattle, WA, for McSwain.
 James H. McComas, Friedman Rubin, White, Anchorage, AK, for Ely.
 Ronald A. Offret, Anglietti & Offret, Anchorage, AK, for Smith.
 Rich Curtner and Kevin F. McCoy, Asst. Fed. Public Defenders, Anchorage, AK, for Whitmore.
 Appeal from the United States District Court for the District of Alaska; H. Russel Holland, District Judge, Presiding. D.C. No. CR-94-00136-5-HRH, D.C. No. CR-94-00136-1-HRH, D.C. No. CR-94-00136-4-HRH, D.C. No. CR-94-00136-3-HRH.
 Before: WALLACE, NOONAN, and THOMPSON, Circuit Judges.
 NOONAN, Circuit Judge.
 
 
 1
 The United States appeals the dismissal of certain counts of an indictment charging the named defendants with various forms of fraud on Alaska Statebank (Statebank), a federally-insured bank of which they were directors. The district court ruled that the counts in question stated bad banking practices but did not charge crimes. Reviewing the sufficiency of the allegations in the indictment as a matter of law, and of course not determining the truth of the allegations, we agree with the district court that certain counts failed to charge one non-director with a crime but we also hold that otherwise the dismissed counts did sufficiently set forth crimes under 18 U.S.C. §§ 1344 and 2, § 1005 and § 371. Addressing a question of first impression in this circuit, we further hold that a charge of "reckless disregard" of bank property adequately charges the bank's directors with a violation of § 1344. Accordingly, we reverse the judgment of the district court and reinstate the dismissed counts. We affirm the judgment of the district court that the indictment does not violate the constitutional prohibition against double jeopardy.
 
 THE INDICTMENT
 
 2
 In the second superseding indictment of March 1, 1995, the grand jury charged, in substance, as follows:
 
 
 3
 Ralph E. Whitmore, Jr., chairman of Statebank, entered into a conspiracy with H. Derrell Smith, president and director of the bank, and three other directors, Robert C. Ely, Thomas J. Miklautsch, and William A. Swain. The object of the conspiracy was to obtain funds from Statebank by which Whitmore could buy the stock of Alaska National Bank of the North (ANBN). The conspiracy began in 1984 with loans by Statebank of $500,000 apiece to Ely, Miklautsch, Swain and one other director (The Director Stock Loans). The loans were renewed in 1986 and 1987. A substantial part of the loans and the renewals was unsecured. The means of obtaining the renewals consisted in false representations to Statebank and false entries on the books of Statebank. The conspiracy deprived Statebank of property and benefitted the conspirators. Their agreement and actions violated 18 U.S.C. § 1344, which provides:
 
 
 4
 Whoever knowingly executes, or attempts to execute, a scheme or artifice ...
 
 
 5
 (1) to defraud a financial institution; or(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
 
 
 6
 shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
 
 
 7
 Their actions also violated 18 U.S.C. § 1005, which at the time provided:
 
 
 8
 Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, national bank or insured bank
 
 
 9
 ...
 
 
 10
 makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System--
 
 
 11
 Shall be fined not more than $5,000 or imprisoned not more than five years, or both.
 
 
 12
 * * * * * *
 
 
 13
 Their actions also abetted the charged crimes in violation of 18 U.S.C. § 2 and constituted a conspiracy in violation of 18 U.S.C. § 371.
 
 
 14
 Further, the indictment charged that in 1987 the named defendants (except for Ely, no longer a director) executed a scheme to defraud Statebank by recklessly causing the bank to pay $2.7 million in dividends in violation of §§ 1344 and 2.
 
 
 15
 Such were the crimes alleged to have been committed by the defendants.
 
 PROCEEDINGS
 
 16
 The district judge had presided over civil litigation against the defendants conducted by the Federal Deposit Insurance Corporation (the FDIC) as receiver of Statebank. The criminal case was assigned to the same judge, who was thus thoroughly familiar with the principals and the principal events in the case. The defendants moved to dismiss certain counts. The magistrate judge, to whom their motions were referred, recommended denial. The district judge, however, in two thoughtful memoranda, comprehending the core of the indictment, granted the dismissal of Counts 7 charging the conspiracy to get Statebank funds to purchase the ANBN stock; Counts 8, 9 and 10 charging bank fraud in execution of the conspiracy; Counts 11, 12, and 14-19, charging false entries in execution of the conspiracy; and Counts 21, 22, 23 and 24 charging bank fraud in the declaration of dividends.
 
 
 17
 The district court laid two foundations for the dismissals of Counts 8-10:(1) To establish bank fraud, the government had to allege and prove a "specific intent to defraud a bank of money or property"--so, the district court reasoned, § 1344 should be construed in parallel with the mail fraud statute, 18 U.S.C. § 1341, as interpreted by McNally v. United States, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The district court not only found no such intent charged but noted that the indictment, p 7.19, declared that the defendants "acted with intent to defraud Alaska Statebank, that is with intent to deceive ordinarily in order to bring about a financial gain to oneself but not necessarily to harm or cause economic loss to the bank." (emphasis added). The specific intent to deprive Statebank of property appeared to be implicitly negated by the italicized words. (2) Counts 8, 9 and 10 alleged that the defendants fraudulently arranged to postpone payment of the loans they had each received from Statebank to buy the ANBN stock. The district court held as to the scheme alleged in the indictment: "this extension of credit was for accruing interest. No money left the bank, although a debt to the bank was plainly created. The bank did not profit from interest it was due on the original stock purchase loans, but the scheme to further the acquisition of ANBN through the renewal of the original, nonfraudulent loans did not result in further money or property passing out of Alaska Statebank. The court holds that Alaska Statebank was not wronged criminally in its property interests through this kind of 'churning' of bank assets so as to keep the original shareholder loans current."
 
 
 18
 For these two reasons the district court dismissed Counts 8, 9 and 10. The court then turned to Counts 11 through 19 alleging false statements in violation of 18 U.S.C. § 1005. The court interpreted the statute as not criminalizing omissions. The court relied on "the somewhat dated" case of Coffin v. United States, 156 U.S. 432, 463, 15 S.Ct. 394, 406, 39 L.Ed. 481 (1895). In Count 11 the defendants were charged with causing the entry of the statement "the additional funds are a necessary injection of capital to enable expansion of business enterprises" and in Count 12 they were charged with causing the entry of the statement that the funds were needed "to maximize [the borrowers'] investment." Neither statement, the court concluded, was false except by omission. Consequently, no crime was charged and Counts 11 and 12 should be dismissed.
 
 
 19
 The court upheld Count 13 and went on to Counts 14 through 19, each of which charged the defendants with causing false entries in the books of Statebank "in that Ralph E. Whitmore, Jr. and H. Derrell Smith caused Thomas J. Miklautsch, William A. Swain and Robert C. Ely, each to sign two Applications for Modification of Loans representing their purported agreements to repay both parts of the stock loans as renewed a second time with interest when, in truth and fact, as each defendant well knew, these agreements were false...." The court ruled that the applications had been executed by the applicants in their capacity as borrowers, not directors. As borrowers, they said they would repay the loans and the interest due. When their representations as borrowers were entered on the books of the bank, nothing untrue was entered; the representations they had made were accurately recorded; as directors, they did not make false entries on Statebank's books. Section 1005 applied only to officers, directors, employees or agents of a bank, not to its borrowers. Consequently no crime was alleged. Counts 14 through 19 were dismissed.
 
 
 20
 The corollary of dismissing the counts charging the execution of the conspiracy was the dismissal of the conspiracy count itself, Count 7, to the extent that the predicate acts of Count 7 were the bank fraud and false statement counts. As a result, as the district court said, "the government's conspiracy count is in essence a nullity."
 
 
 21
 The district court also dismissed Counts 21 through 24 of the indictment alleging bank fraud in violation of § 1344 on the part of Whitmore, Smith, Miklautsch and Swain. The indictment stated that during 1987, while Statebank was losing millions of dollars, the defendants declared $2.7 million in dividends "with reckless disregard" for the effect on Statebank. The district court ruled that the counts charged the systematic ignoring of "good banking practices" but no fraud. Everyone knew what was going on. Whitmore with the aid of the other defendants was apparently "able to do whatever he wished" at Statebank. He did "not have to engage in false or fraudulent pretenses, representations, or promises." The indictment's allegations of fraud were negated by the indictment's own description of the openness of the conduct carried out. "Bad judgment, bad banking, arrogance"--all these faults might be found by the FDIC but no criminal conduct was charged. What the defendants had been doing "had to be obvious to everyone; and it was equally obvious that the harm was done when the initial stock purchases were made, not from what followed."
 
 
 22
 The court added its own commentary on the situation in which the charged activities had arisen. In the 1980's real estate speculation "was rampant in the Anchorage community," fueled by oil development in Alaska. The crash in the world market for oil "burst the bubble of real estate speculation." As a consequence many banks in Alaska failed, among them ANBN and, near the end, Statebank. The FDIC took over as receiver and began to sue the responsible officers civilly. The civil actions, the court implied, were sufficient redress for the unsound, but not criminal, banking practices which a sudden spin in the wheel of fortune had made open to recrimination and harsh criticism. The court, however, denied the defendants' motions to dismiss the indictment on the ground of double jeopardy.
 
 
 23
 The government appeals all of the dismissals. The defendants appeal the denial of their double jeopardy motions.
 
 ANALYSIS
 
 24
 The Fraudulent Loan Renewals. Counts 8, 9 and 10 adequately alleged that the defendants deprived Statebank of property. Loans and interest were due from the defendants. Instead of collecting, Statebank was manipulated not to collect and was manipulated to extend further credit without security. To deprive a bank of property you do not have to move cash out of its vaults. You deprive a bank of property if you prevent its collection of debts that are due or if you arrange for the bank to credit you with a payment you have not made. That is what these defendants are alleged to have done, to have prevented Statebank from collecting loans and interest that were due and to have arranged for Statebank to create further credit in their favor which would pay the interest due. As § 1344 specifies, it is a crime to obtain bank credits by false pretenses.
 
 
 25
 The district court focused on the awkward and ungrammatical, if not unintelligible, phrase in p 7.19 of the indictment that the defendants acted "with intent to deceive ordinarily in order to bring about a financial gain to oneself but not necessarily to harm or cause economic loss to the bank." As we conclude that the alleged intent to obtain credits from the bank satisfies § 1344, and that this intent is sufficiently alleged, we do not attach significance to the "not necessarily" clause of p 7.19.
 
 
 26
 The False Entries. False pretenses were adequately alleged as to the false entries. The century-old case relied on by the district court has become obsolete even if it has not received its own burial and coffin. See United States v. Darby, 289 U.S. 224, 227, 53 S.Ct. 573, 574, 77 L.Ed. 1137 (1933); United States v. Luke, 701 F.2d 1104, 1108 (4th Cir.1983).
 
 
 27
 Every circuit to interpret either 18 U.S.C. § 1005 or § 1006 (an analogous statute applying to non-bank financial institutions) has determined that material omissions are false statements for the purposes of the statutes. United States v. Cordell, 912 F.2d 769 (5th Cir.1990); United States v. Chandler, 910 F.2d 521 (8th Cir.1990); United States v. Rochester, 898 F.2d 971 (5th Cir.1990); United States v. Krepps, 605 F.2d 101, 109 (3d Cir.1979) United States v. Spector, 326 F.2d 345 (7th Cir.1963).
 
 
 28
 Plainly, a statement may be false if a vital fact is omitted. Count 11 asserts that the reason given for the added loans was because "the additional funds are a necessary injection of capital to enable expansion of business enterprises,"--a statement which was false since the real reason was to make the loans appear current and ensure that the borrowers would not have to make any payments on the loans out of their own resources. Similarly, count 12 charges that the renewals and extensions were made "to maximize [the borrower's] investment" while the same vital purpose of the extensions and renewals was omitted. Counts 11 and 12 sufficiently allege false statements.
 
 
 29
 Counts 14 through 19 were dismissed as at the most charging borrower fraud, a crime not within the reach of § 1005. The counts, however, allege that not only were the borrowers' agreements to pay false, but that the defendants, knowing their falsity, caused these false promises to be entered on Statebank's books. The alleged action of the defendants was not borrower fraud but false entries by directors. The government can prove its case in terms of the indictment if it can prove (a) that Whitmore and Smith caused Miklautsch, Swain and Ely to make false agreements and (b) that the defendants in their capacity as directors caused these agreements to be recorded on the books of the bank. If the government should prove (a) only, the government would not satisfy the requirements of § 1005. If the government should prove (a) and (b), it would prove violation of § 1005 as validly charged. The mere making of a false promise as a borrower knowing that the promise would be entered on the bank's books is not within the scope of § 1005. Consequently, the indictment is bad as to Ely who was not a director in 1987. Counts 18 and 19 should be stricken as to him.
 
 
 30
 With the reinstatement of Counts 11, 12, 14, 15, 16, 17, 18, and 19 the indictment adequately charges the use of false representations to commit the bank fraud alleged in Counts 8, 9, and 10. With the restoration of all these specific counts the conspiracy charged in Count 7 ceases to be a nullity and becomes the comprehensive charge at the core of the government's case. The defendants are accused of agreeing with each other to deprive Statebank of cash and credits by making false representations and by causing false entries to be made upon its books.
 
 
 31
 The Dividend Counts. Counts 21 through 24 begin with a narrative setting out the following: Whitmore was the majority stockholder in Alaska Bancorporation (ABC), whose wholly owned subsidiary was Alaska Bancshares (ABS). Through ABC and ABS Whitmore owned 81% of Statebank. In 1986 he caused ABS to borrow nearly $4.7 million from Mellon Bank, pledging the Statebank shares owned by ABS and ABC. Dividends from Statebank were the only income ABS had from which to repay the loan. This situation created the objective of what the indictment alleges was a scheme to defraud Statebank by causing it to pay "massive and unprecedented dividends" in 1987.
 
 
 32
 The "manner and means" of the scheme are alleged as follows: Whitmore, Smith, Miklautsch and Swain caused the Director Stock Loans to roll over with additional infusions of unsecured credit. This charge is the same as that made in Counts 7-10, but additional effects are alleged, viz., the bank's income was overstated and a charge off of the loans to the Reserve for Loan Losses was avoided. Whitmore and Smith are additionally alleged to have maintained this Reserve at an inadequate level and to have filed false Consolidated Reports of Condition and Income (Call Reports) with the FDIC. It is then alleged that during 1987 the bank was "suffering huge losses" but the defendant directors went ahead with the declaration of dividends in disregard of the advice of "various bank regulatory agencies." Climactically, it is alleged that Whitmore, Smith, Miklautsch and Swain voted dividends of $1,000,915 on January 16, 1987 (Count 21); $300,274 on March 25, 1987 (Count 22); $600,549 on June 11, 1987 (Count 23); and $800,732 on October 8, 1987 (Count 24).
 
 
 33
 The indictment is not clear how the allegedly false Call Reports permitted, or related to, the declaration of dividends, especially as banking regulatory agencies are said to have advised against the declarations. The indictment is not clear as to the causal connection between the treatment of the Director Stock Loans and the declaration of dividends. The indictment does not allege that the allegedly improper treatment of these loans made it possible to declare the dividends; it would be a guess, although not an unreasonable guess, that there was some connection between the two. The indictment affords no information about the surplus, if any, of Statebank or the state of its condition when the million dollar dividend was declared on January 16, 1987. The indictment, in short, does not set out how false representations were the means by which the disbursement of dividends was achieved. Consequently the indictment fails to charge a crime under § 1344(a)(2).
 
 
 34
 The indictment is not a model of clarity, but we have held that an "indictment that sets forth the charged offense in the words of the statute itself is generally sufficient." United States v. Musacchio, 968 F.2d 782, 787 (9th Cir.1992). This indictment provides the "essential facts necessary to apprise a defendant of the crime charged; [and so] need not specify the theories or evidence upon which the government will rely to prove those facts." United States v. Cochrane, 985 F.2d 1027 (9th Cir.1993). "In reviewing the sufficiency of the indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner. The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." United States v. Allender, 62 F.3d 909, 914 (7th Cir.1995) (citations omitted).
 
 
 35
 The indictment does allege that the defendant directors declared the dividends "without regard to prudent banking practices and with reckless disregard for the effects the payment of these dividends would have on Alaska Statebank." Is that allegation sufficient to charge a crime under § 1344(a), which does not refer to false representation but makes it a crime "to defraud a financial institution?" The fraud charged here consists in the reckless disregard by fiduciaries of the property committed to their care. If the indictment charged the directors in their capacity as directors with throwing the bank's money out the window, or if the indictment charged the chairman, abetted by the directors, of ordering the cashier to turn over $2 million to him for his personal use, it could scarcely be doubted that crimes under § 1344(a) were being alleged. The brazen openness with which these hypothetical handouts were made would not remove the stain of fraud. Here, the charge is of the use of a legal form, the declaration of dividends, to extract from Statebank cash that should not have been paid out. Neither the openness of the maneuver nor the legal form in which it was dressed remove the stain of fraud if in fact the fiduciaries acted in reckless disregard of the property of Statebank.
 
 
 36
 Reckless disregard is the equivalent of intent to defraud under § 656, the parallel bank theft statute applicable to bank employees. United States v. Crabtree, 979 F.2d 1261, 1269 (7th Cir.1992), cert. denied, 510 U.S. 878, 114 S.Ct. 216, 126 L.Ed.2d 173 (1993). United States v. Woods, 877 F.2d 477, 480 (6th Cir.1989) (per curiam); United States v. Cyr, 712 F.2d 729, 732 (1st Cir.1983); United States v. Krepps, 605 F.2d 101, 104 (3rd Cir.1979); United States v. Larson, 581 F.2d 664, 667 (7th Cir.1978). Reckless disregard equally satisfies the intent required under § 1344. See Willis v. United States, 87 F.3d 1004, 1007 (8th Cir.1996). What is charged in the indictment is not mere breach of the duty of a fiduciary to act honestly and prudently but a breach of that duty resulting in the reckless disposition of $2.7 million of Statebank funds. The defendants are adequately apprised of the charge of crimes committed in violation of § 1344(a).
 
 
 37
 We take the district court's point that if the world price of oil had not fallen, all the troubles that befell the defendants might not have occurred. They might be today rich and respected citizens of Anchorage. They were unlucky in the extreme. Many financial irregularities come to light only in bad times. If the irregularities are criminal, as those charged here are portrayed as being, the defendants cannot excuse criminal conduct by the plea of bad luck.
 
 
 38
 Double Jeopardy. The defendants contend that the Double Jeopardy Clause is offended because they were all sued civilly by the FDIC for the same acts and the FDIC sought punitive as well as actual damages. The defendants' syllogism is simple: The government cannot constitutionally seek to punish us twice for the same acts. Punitive damages, as the name implies, are a form of punishment. Since the government has sought such punishment once, it is disabled from seeking to punish us by criminal proceedings.
 
 
 39
 This earnest argument does not succeed because the FDIC did not sue the defendants as the United States. The FDIC was "acting only as the receiver of a failed institution." See Atherton v. FDIC, 519 U.S. 213, ----, 117 S.Ct. 666, 673, 136 L.Ed.2d 656 (1997). The United States was not a party. The Double Jeopardy Clause has no application. United States v. Heffner, 85 F.3d 435, 439 (9th Cir.1996). In F.D.I.C. v. Meyer, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), it was assumed that the FDIC was an agency of the United States, possessing sovereign immunity unless that immunity was waived. Meyer did not purport to determine the status of the FDIC when, as here, taking over a failed bank as receiver, it sued civilly to redress wrongs done the bank and like many tort plaintiffs sought both compensatory and punitive damages. The FDIC in its corporate character of receiver "is not the federal sovereign vindicating the criminal law of the United States." Heffner, 85 F.3d at 439.
 
 
 40
 A second reason now blocks the Double Jeopardy contention. The Double Jeopardy Clause protects against the "imposition of multiple criminal punishments for the same offense...." Hudson v. United States, --- U.S. ----, ----, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997). If a penalty is applied under a civil statutory scheme, only the "clearest proof" will transform a civil sanction into a criminal punishment. Id. There has been no such showing here. The FDIC's request for punitive damages did not constitute a criminal punishment, and the Double Jeopardy Clause poses no obstacle to the defendants' trial on the indictment.
 
 
 41
 The dismissed counts should be Reinstated except that Ely is to be struck from Counts 18 and 19. The judgment of the district court denying the motions to dismiss for double jeopardy is AFFIRMED.