**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Cardie Mae Kelly GOLD, Defendant— Appellant.**

No. 01–50019.
D.C. No. CR–99–02963–BTM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 12, 2001.

Decided Oct. 18, 2001.

Before BRUNETTI, RYMER, and WARDLAW, Circuit Judges.

### MEMORANDUM *

Cardie Mae Kelly Gold appeals her conviction and sentence for five counts of bank fraud and aiding and abetting in violation of 18 U.S.C. §§ 2 and 1344. We affirm.

### I

Gold contends that there was insufficient evidence that she intended to defraud the Bank of America and knowingly participated in the acts of fraud, first because she was not physically present when the transactions underlying counts three and five took place. However, physical participation is not required for aiding and abetting. *See United States v. Urrutia,* 897 F.2d 430, 433 (9th Cir.1990). There was sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that the Point Loma and Mission Valley branch transactions depended upon Gold's providing the telephone number for ordering checks and the bank codes required to order checks in the name of Jack Najor. The evidence shows that only an insider such as Gold was able to access Valerie Ward's account and customer profile, including personal identifying information such as a driver's license number, date and place of birth, social security number, and mother's maiden name. This information was necessary for all the transactions, including those that occurred without Gold's physical presence. It enabled Sloan and Fails to open a new account in Ward's name, Fails to obtain a

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

power of attorney over the account in the name of Denise Williams, and—posing as Denise Williams—to deposit forged checks and cash them.

■ Next, Gold contends that the evidence was insufficient because she was unaware of the illegal nature of the transactions charged in counts 1, 2 and 4. She suggests that it was Fails's idea to defraud the bank by making deposits and withdrawals from fraudulent accounts; that the information from the Valerie Ward dormant account as well as the forged check that accomplished the first transaction were supplied to Sloan by Fails; and that the transaction itself was not unusual as bank policy permitted a manager to approve a transaction even when the customer did not have identification on hand. Nevertheless, the evidence shows that it was Gold who approved the Barrio Logan transactions and that without her approval, Sloan would never have been able to access Ward's account because she lacked proper identification. Gold personally opened the vault and handed $59,995 over to Fails and Sloan on October 21; then she filled out the CTR to make it look like someone else conducted the withdrawal. Sloan also testified that she kept $2,000 (or one-third) of the October 11 withdrawal and delivered $2,000 to Gold. From this, and the fact that Fails retained two-thirds of the proceeds of other transactions, the jury could reasonably infer that Gold got one-third of the cash withdrawn on October 10 and 21, 1996 as well. Further, when Gold was asked by the bank's investigator to furnish the videotape of the October 21 withdrawal, Gold testified that she sent it through the bank's internal mail. It was never received, permitting the inference that Gold had destroyed it. Finally, the evidence shows that Gold discussed the investigation with Sloan and

Fails and that they mutually pledged secrecy. In sum, there was an ample basis upon which to find Gold guilty of bank fraud beyond a reasonable doubt.

## II

■ Gold challenges the government's single peremptory strike of an African–American juror as a prospective alternate juror on *Batson*[1] grounds. However, the government's explanation (substantial financial hardship) for exercising a peremptory challenge as to Jones was race-neutral and the district court did not clearly err in accepting it. Gold contends that the explanation was pretextual because the government did not initially agree with the district court's inclination to strike Jones for cause. We read the record differently. The government initially indicated that Jones could be excused for cause, but the court decided to question several prospective jurors further, including Jones. Gold also maintains that the justification was pretextual because similarly situated non-African-American venirepersons were not struck. However, those venirepersons had different hardship considerations.

## III

■ Gold faults the district court for failing to instruct on her theory of defense. However, the court fashioned an instruction to emphasize that merely participating in the transactions without knowledge of the scheme and an intent to defraud was insufficient. Beyond this, Gold was not entitled to an instruction that she could not be guilty because her actions conformed to proper bank policy. *See United States v. Ely,* 142 F.3d 1113, 1121 (9th Cir.1997). There was no evidence that knowing approval of deposits and withdrawals of

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct.     1712, 90 L.Ed.2d 69 (1986).

forged checks through someone else's account conforms to bank policy. In any event, Gold was free to argue her theory to the jury.

## IV

Gold argues that her name should have been separated from Fails and Gold on the general verdict form, but points to no authority in support. The court correctly instructed the jury that it must decide the case of each defendant on each crime charged against that defendant separately, without the verdict as to one defendant controlling the verdict on any other count or as to any other defendant.

## V

Gold contends that her sentence should not have been enhanced two levels for obstruction of justice under U.S.S.G. § 3C1.1 because no evidence was presented that established that Gold's testimony was false or material. However, we are not firmly convinced that Gold did not lie when she testified that she was shocked to see Fails's picture in a lineup of potential suspects. Gold had known Fails since Fails was ten years old, Gold had worked with Fails at the Bank of America, and Gold knew that Fails was involved in the October 21 transaction. *See United States v. Ancheta*, 38 F.3d 1114, 1117 (9th Cir. 1994) (review is for clear error). Golds submits that she assisted the investigation and prosecution by identifying Fails, but this does not make her falsehood immaterial. As the district court found, her testimony was intended to disguise the fact that Gold knew that Fails was involved

and to deceive the jury about Gold's role in the scheme.

AFFIRMED.