**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

VICTOR M. CAMACHO,
          *Defendant-Appellant.*

No. 04-10078

D.C. No.
CR-03-00280-KJM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Magistrate Judge, Presiding

Argued and Submitted
February 16, 2005—San Francisco, California

Filed June 24, 2005

Before: Sidney R. Thomas, Richard A. Paez, Circuit Judges,
and Larry A. Burns, District Judge.*

Opinion by Judge Paez

---

*The Honorable Larry A. Burns, United States District Judge for the
Southern District of California, sitting by designation.

**COUNSEL**

Melissa A. Fair, Sacramento, California, for the defendant-appellant.

Samantha S. Spangler, Sacramento, California, for the plaintiff-appellee.

**OPINION**

PAEZ, Circuit Judge:

   Victor Camacho is a federal civilian employee serving as an Air Reserve Technician in the 749th Aircraft Maintenance Squadron at the Travis Air Force Base in California. Camacho

allegedly stole a home theater system from the Base Exchange; in response, the squadron commander sanctioned Camacho for theft. Nearly one year later, the United States Attorney's office filed an information charging Camacho for the same alleged theft, as a misdemeanor violation of 18 U.S.C. § 641. Camacho filed a motion to dismiss the information on double jeopardy grounds, arguing that the sanctions his commander imposed constituted punishment barring his subsequent prosecution. We have jurisdiction over the district court's collateral order under 18 U.S.C. § 1291,[1] and we review de novo. *United States v. Schiller*, 120 F.3d 192, 193 (9th Cir. 1997). We affirm the district court's denial of Camacho's motion to dismiss.

## I.  Facts[2]

On August 26, 2002, Victor Camacho went to the Travis Air Force Base Exchange and bought one home theater system. He left the Exchange with two, the second of which he allegedly stole. A Base Exchange employee alerted Camacho's supervisor to the incident, and the supervisor asked Camacho to return to the base the next day. On August 27, 2002, Camacho returned to the base with the second system and was detained at the gate by base patrol officers. After meeting with base officials, Camacho signed a form acknowledging the suspension of his privileges to use the Base Exchange for six months. The acknowledgment form also provided notice to Camacho of his right to request an administrative hearing, but no request was made. By signing the form, Camacho also acknowledged that he "will be subject to possible prosecution by civilian or federal authorities."

---

[1]Camacho's claim has "some possible validity" and is in that sense "colorable." *United States v. Sarkisian*, 197 F.3d 966, 983 (9th Cir. 1999). We therefore have interlocutory jurisdiction, *see id.*, and we reject the government's argument to the contrary.

[2]The district court had no need to make detailed factual findings because the parties are in substantial agreement as to the relevant facts. We therefore set forth the facts as agreed to by the parties.

In addition to suspending his Base Exchange privileges, Camacho's supervisors—Commander John Korach of Camacho's reserve unit, and Superintendent Gary Runow, Camacho's immediate civilian and military supervisor—imposed several other sanctions in response to the alleged theft. Camacho was officially reprimanded. His annual incentive award was reduced by over $300. His performance appraisal scores were reduced in three of nine categories, impeding his prospects for promotion. Finally, Camacho was required to undergo counseling as a result of the incident. Korach and Runow maintain that "these punishments will have a life-long impact on Chief Camacho's civilian and military employment."

The Judge Advocate at Travis Air Force Base requested criminal prosecution for the alleged theft. On June 16, 2003, long after Camacho's supervisors had disciplined him, the U.S. Attorney for the Eastern District of California filed an information charging Camacho with a misdemeanor violation of 18 U.S.C. § 641. Camacho pled not guilty at his arraignment, and filed a motion to dismiss on double jeopardy grounds. Camacho's motion was supported by a letter from Commander Korach and Superintendent Runow, urging the U.S. Attorney to defer Camacho's criminal prosecution indefinitely. They argued that Camacho was "more than adequately punished" and that the disciplinary actions "were intended as [his] sole punishment, and are sufficient discipline for the petty crime charged." The Judge Advocate, however, through Federal Court Liaison Linda Allen, disagreed and continued to urge prosecution. Allen argued that the "administrative action" Camacho's supervisors had taken "has no impact on our decision with regard to prosecution," and that none of the sanctions was punitive in nature. A magistrate judge denied the motion to dismiss, and the district court affirmed. Camacho timely appealed.

## II. Discussion

[1] The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same

offence to be twice put in jeopardy of life or limb . . . .” U.S. Const. amend. V. It consists of “three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.” *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *see also Ex parte Lange*, 85 U.S. 163, 173 (1873). But the Supreme Court “ha[s] long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, ‘in common parlance,’ be described as punishment.” *Hudson v. United States*, 522 U.S. 93, 98-99 (1997) (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549 (1943)). The Clause prohibits only the imposition of multiple *criminal* punishments for the same offense. *Id.*; *see also Hess*, 317 U.S. at 548-49 (“[O]nly [criminal punishments] subject the defendant to ‘jeopardy’ within the constitutional meaning.”).

[2] Camacho’s supervisors acted solely in their capacity as employers when they imposed disciplinary sanctions. They used only measures that are available to private employers and did not invoke the government’s sovereign power to punish. When an entity of the federal government acts as an employer, that government entity “is not the federal sovereign vindicating the criminal law of the United States.” *See United States v. Heffner*, 85 F.3d 435, 439 (9th Cir. 1996). Camacho raises a question of first impression in this circuit; however, the Second,[3] Fifth,[4] Sixth,[5] Seventh,[6] and Eleventh[7] Circuits all have concluded that in such situations, double jeopardy analysis does not apply.[8] We follow the considered judgment

---

[3]*United States v. McAllister*, 119 F.3d 198, 199 (2d Cir. 1997).

[4]*United States v. Reyes*, 87 F.3d 676, 677, 679-80 (5th Cir. 1996).

[5]*United States v. Payne*, 2 F.3d 706, 710 (6th Cir. 1993).

[6]*United States v. Wingate*, 128 F.3d 1157, 1163 (7th Cir. 1997).

[7]*United States v. Reed*, 937 F.2d 575, 578 (11th Cir. 1991).

[8]Camacho argues that these cases do not apply because they were decided under *United States v. Halper*, 490 U.S. 435 (1989), which was

of our sister circuits and hold that, because Camacho's federal employer imposed sanctions no different from those a private employer could have imposed, his subsequent criminal prosecution does not trigger the Double Jeopardy Clause.

As Camacho conceded before the magistrate judge, the sanctions at issue here were without question the sort of punishment a private employer could impose upon a private employee.[9] The Second Circuit decided a very similar case in *McAllister*, where the defendant, a soldier in the Army, was prosecuted for driving while intoxicated. 119 F.3d at 199. McAllister's commanding officer had already issued a letter of reprimand, reduced his rank, suspended his on-base driving privileges for one year, and barred his re-enlistment for the same incident. *Id.* at 198. Denying his motion to dismiss the subsequent criminal charges on double jeopardy grounds, the court concluded:

> In disciplining McAllister after his arrest, the gov-

subsequently overruled by *Hudson*, 522 U.S. at 95. But these circuits all *expressly* disavowed any reliance on *Halper*. *See McAllister*, 119 F.3d at 200 ("[T]his appeal does not require us . . . to reconcile apparently conflicting dicta in *Halper* . . . ."); *Wingate*, 128 F.3d at 1163 ("[T]he application of the *Halper* test to this kind of sanction would work an absurd result." (quotation marks omitted)); *Reyes*, 87 F.3d at 680 ("[W]e will not apply the *Halper* test because the Double Jeopardy Clause is inapplicable."); *Payne*, 2 F.3d at 711 ("[W]e reject Payne's contention for the reasons stated in *Reed*."); *Reed*, 937 F.2d at 578 ("[T]he *Halper* test . . . is inapposite to the facts of this case."). The fact that *Halper* was subsequently overruled by *Hudson*, 522 U.S. at 95, thus has no bearing on the analysis or holdings of these cases. We reject Camacho's argument that *McAllister*, *Reyes*, and *Reed* are "inapposite."

[9]Our analysis depends upon the nature of the sanctions imposed by the government in this case. Here, the disciplinary sanctions imposed on Camacho were no different than those which could have been imposed by a private entity. Only when disciplinary sanctions imposed by the government acting in its role as sovereign are the functional equivalent of criminal punishment is the double jeopardy bar implicated.

ernment acted not in its capacity as sovereign, but rather as an employer. The measures imposed by the commanding officer . . . , regardless whether they had any punitive intention, were sanctions that a private employer could impose on an employee who has endangered safety by drunken driving on the employer's premises. Such sanctions do not require use of sovereign power or invoke the power of the state to punish in the manner of a sentence of imprisonment. . . .

We hold that, where the government, acting as employer of members of the armed forces, disciplines a member by using measures that are available to private employers, and are not uniquely within government's power to punish for criminal wrongdoing, such discipline ordinarily will not constitute "punishment" within the meaning of the Double Jeopardy Clause.

*Id.* at 200-201.

The Fifth Circuit reached the same conclusion where the defendant was a civilian Air Force employee who argued that his three-day, unpaid suspension for drunk driving on the Air Force base constituted punishment that barred his subsequent prosecution. *Reyes*, 87 F.3d at 677, 679-80. "[I]f the government was acting in a role other than as sovereign in its suspension of [the defendant], and was doing no more than a typical private employer generally could lawfully do without invoking the machinery of the sovereign," then, the court concluded, "the Double Jeopardy Clause is inapplicable."[10] *Id.* at 680.

---

[10]As the Fifth Circuit noted, the Supreme Court has in other contexts distinguished between the constitutionality of government actions taken in its capacity as sovereign and those taken only in its capacity as employer. *Reyes*, 87 F.3d at 680. For example, First Amendment protections of free

In *Wingate*, the Seventh Circuit rejected a similar claim brought by an employee of the Immigration and Naturalization Service ("INS"), who was suspended for four months after being indicted for "depriving the INS of his honest services." 128 F.3d at 1158. Wingate argued that his suspension constituted punishment for double jeopardy purposes; the Seventh Circuit disagreed. The court concluded that applying double jeopardy analysis to the context of employment sanctions "would work an absurd result." *Id.* (citing *Reed*, 937 F.2d at 578). The court adopted a categorical approach, reasoning that "[t]he suspension of an indicted government official is always remedial in nature, and does not implicate the Double Jeopardy clause." *Id.* at 1163.

The Sixth and Eleventh Circuits similarly have agreed that employment-related disciplinary measures imposed on Postal Service employees do not amount to punishment for double jeopardy purposes. *Payne*, 2 F.3d at 710; *Reed*, 937 F.2d at 578. In *Reed*, a letter carrier was indicted for embezzling money from his deliveries after an arbitrator had placed him on a thirty-day "disciplinary suspension" for the same conduct. *Id.* at 575-76. Denying the defendant's double jeopardy claim, the court appears to have outlined a categorical rule, reasoning that, as long as the employer's sanction was "within the framework provided by an employment contract, [it] serves 'legitimate nonpunitive governmental objectives' and is *by its nature* remedial." *Id.* at 578 (quoting *Halper*, 490 U.S. at 448) (emphasis added); *see also Payne*, 2 F.3d at 711

---

speech do not extend to government employees if the speech is not of public concern. *Id.* (citing *Connick v. Myers*, 461 U.S. 131, 146-48 (1983)). Furthermore, searches and seizures conducted by government employers do not require probable cause and instead are subject to a reasonableness standard. *Id.* (citing *O'Connor v. Ortega*, 480 U.S. 709, 721-27 (1987) (plurality opinion) and *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 669-72 (1989)). In short, "[t]here is ample support for constitutionally distinguishing government acting as employer from government acting as sovereign." *Id.*

(rejecting the defendant's motion to dismiss "for the reasons stated in *Reed*").

Our sister circuits have identified sound policy reasons for adopting such a rule. First, barring a defendant's prosecution for misappropriation of postal funds would transform the Double Jeopardy Clause into "a forum-shopping tool for government employees who have violated the law." *Reed*, 937 F.2d at 578. The government would be precluded from firing or even sanctioning an employee accused of serious misconduct for fear of jeopardizing a subsequent prosecution. *McAllister*, 119 F.3d at 201. Such an interpretation would also give government employees rights against subsequent prosecution that private employees do not enjoy. *Reyes*, 87 F.3d at 681. And, if the timing were reversed and an employee's criminal prosecution preceded disciplinary employment sanctions, the government could be prevented from suspending or firing an employee "with the means and opportunity to commit more crimes." *Wingate*, 128 F.3d at 1163. Applying traditional double jeopardy analysis in this context is simply impracticable.

This court has considered the problem of the government's dual roles as it relates to double jeopardy only in the corporate receivership context. *Heffner*, 85 F.3d at 438 (relying on *United States v. Beszborn*, 21 F.3d 62, 67-67 (5th Cir. 1994)); *see also United States v. Ely*, 142 F.3d 1113, 1121 (9th Cir. 1998) (holding that since the FDIC acted only in its capacity as receiver, "[t]he United States was not a party" and therefore "[t]he Double Jeopardy Clause has no application"). Our reasoning in that related context, however, provides strong support for our conclusion that Double Jeopardy analysis is inapplicable where the government acts in its capacity as employer rather than as sovereign.

In *Heffner*, the Resolution Trust Corporation ("RTC"), an entity of the federal government, inherited litigation involving a real estate deal from a bank for which the RTC acted as a corporate receiver. 85 F.3d at 436. The deal soured, and the

RTC's complaint sought recision, actual damages, and "punitive damages in an amount sufficient to punish and make an example of the defendants . . . ." *Id.* at 437 (quotation marks omitted). That case settled, with a release by the RTC of all claims arising out of the same underlying transactions. *Id.* A federal grand jury subsequently indicted the defendants for conspiracy and fraud, among other charges. *Id.* at 437-38. In response to the defendants' motion to dismiss on double jeopardy grounds, the district court held:

> Defendants' argument ignores the well established principle that the RTC, like the FDIC is empowered to act in two entirely separate and distinct capacities. When the RTC is acting in its capacity as a receiver, its actions are not conduct of the Government for purposes of the Double Jeopardy Clause.

*Id.* at 438.

We agreed. *Id.* at 439. We acknowledged that the RTC has subpoena power and that RTC investigators " 'assist[ ] the Federal Bureau of Investigation and U.S. Attorneys in prosecuting individuals.' " *Id.* (quoting Dep't of Justice, *Financial Institution Fraud Federal Prosecution Manual* (1994)). Nonetheless, those characteristics were not sufficient "to transform the RTC as receiver of a federally insured institution into the federal government prosecuting a violation of the federal criminal law." *Id.* In short, the RTC's separate civil and criminal functions could not be mingled. *Id.* Because the United States in its sovereign capacity was not a party to the civil case, the Double Jeopardy Clause was not implicated. *Id.*; *see also Ely*, 142 F.3d at 1121.

[3] Similarly here, the United States did not invoke its sovereign power in disciplining Camacho, and therefore the government's separate role as employer should not be merged with its criminal enforcement functions. The employment sanctions at issue here are categorically not susceptible to

double jeopardy analysis; we therefore need not apply the traditional two-part test the Supreme Court outlined in *Hudson*. 522 U.S. at 99. Camacho was suspended from shopping at the Exchange from which he had allegedly been caught stealing; his performance review ratings were lowered to conform to his actual performance. Applying the Fifth Amendment to bar criminal prosecution in conjunction with these disciplinary measures would stretch the protection of the Double Jeopardy Clause beyond its intended limits.

## III.   Conclusion

Camacho's criminal prosecution for theft of a home theater system from the Travis Air Force Base does not violate his Fifth Amendment protection against double jeopardy. The discipline to which Camacho was subjected is the type of discipline any private employer might have imposed on an employee. It did not rely on the government's sovereign power and is thus outside the scope of double jeopardy concerns. We therefore affirm the district court's denial of his motion to dismiss the indictment on that ground.

**AFFIRMED.**