IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50637
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROLAND C. REYES,

Defendant-Appellant.


_____

Appeal from the United States District Court for the
Western District of Texas
_____

June 26, 1996

Before GARWOOD, HIGGINBOTHAM and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Roland C. Reyes (Reyes) appeals the denial of his motion to dismiss the indictment charging him with operating a motor vehicle while intoxicated at Kelly Air Force Base (Kelly AFB) in violation of 18 U.S.C. § 13, incorporating section 49.04 of the Texas Penal Code.

**Facts and Proceedings Below**

Reyes is charged with driving while intoxicated at Kelly AFB, on or about January 31, 1994. Reyes, a civilian employee of the Department of the Air Force who works at Kelly AFB, argues that his prosecution is barred by principles of double jeopardy because he has already been "punished" by a three-day, unpaid suspension from

work pursuant to Department of the Air Force regulations and 5 U.S.C. §§ 7501-7543.[1]  The magistrate judge denied the motion to dismiss the indictment on the ground that the suspension did not constitute punishment under the Double Jeopardy Clause, precluding any punishment imposed by the criminal proceeding from being a second punishment for double jeopardy purposes.  The district court denied Reyes' appeal of the denial of his motion to dismiss.  Reyes now appeals to this Court.

### Discussion

This Court has jurisdiction over an interlocutory appeal from a refusal to dismiss an indictment on grounds of double jeopardy. *United States v. Perez,* 70 F.3d 345, 346-47 (5th Cir. 1995).  The Double Jeopardy Clause states: "nor shall any person be subject to the same offense to be twice put in jeopardy of life or limb." U.S. CONST. AMEND. V.  It provides protection from both multiple prosecutions and multiple punishments for the same offense.  *Id.* at 348.  Only the protection from multiple punishments is before us in the instant case.

The Supreme Court has held that certain civil sanctions may constitute "punishment" under the Double Jeopardy Clause and trigger its protection. *United States v. Halper*, 109 S.Ct. 1892, 1901 (1989).  Whether such a civil sanction is punishment within the meaning of the Double Jeopardy Clause may depend upon the purposes of the civil sanction.  *E.g.*, *id.*  In *Halper*, the Court

---

[1]     Reyes' privilege to drive on the base was also revoked for three days.  This was not asserted as a basis for his motion to dismiss before the magistrate judge or the district court.

2

held that if either retribution or deterrence is a purpose of such a civil sanction, then it is punishment. *Halper*, 109 S.Ct. at 1901-02.[2] We refer to this purpose-oriented test as the *Halper* punishment test. Reyes argues that the imposition of a criminal punishment for his drunk driving would be a second punishment prohibited by the Due Process Clause pursuant to the *Halper* punishment test because his suspension from work was for deterrent or retributive purposes, not for any remedial purpose. The government does not essentially dispute that the suspension was imposed, at least in part, for purposes of deterrence, to deter Reyes, or other employees at the base, from similar on-base conduct.[3]

The fact that the government suspended Reyes at least partially for a deterrent purpose does not end our inquiry. The

---

[2] *Halper* states "a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can *only* be explained as *also* serving either retributive or deterrent purposes, is punishment . . . ." *Halper*, 109 S.Ct. at 1902 (emphasis added). The *Halper* opinion then precedes to restate its holding, characterizing punishment as a sanction that "may not fairly be characterized as remedial, but *only* as a deterrent or retribution." *Id.* (emphasis added). The varying placement and inclusion of solely and only in these two statements is somewhat confusing. We recognize that Justice O'Connor reads *Halper* in accordance with the second iteration of the punishment test, which may be described as a "punitive purposes only" test. *See Department of Revenue of Montana v. Kurth Ranch*, 114 S.Ct. 1937, 1953 (1994)(O'Connor, J. dissenting). This Court, however, has relied on the first *Halper* statement of the test, characterizing the standard for determining whether a sanction is punishment as "whether the civil sanction serves *solely* a remedial purpose, or *also* a retributive or deterrent purpose." *Perez*, 70 F.3d at 348 (emphasis added).

[3] The government argues that the suspension was to promote the efficiency of the service, but the only efficiency the government identifies was to be gained by deterring Reyes (and possibly others) from driving while intoxicated on Kelly AFB.

question facing us, which is one of first impression in this Circuit, is whether literal application of the *Halper* punishment test is appropriate in the context of government-imposed employee discipline of a type which an ordinary private employer generally could lawfully impose without invoking the machinery of the sovereign.[4] In other words, does this kind of government-imposed

---

[4] This Circuit has applied the *Halper* punishment test outside the context of civil fines. *See, e.g., United States v. Woods*, 949 F.2d 175 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 1263 (1992). In *Woods*, the defendant-appellant argued that he was previously "punished" by the placement of his savings and loan association (S&L) in receivership. *Woods*, 949 F.2d at 176-77. This Court held that the S&L was placed in receivership to protect the United States Treasury from avoidable insurance losses by assuring proper bank management. *Id.* at 177. Because there was no retributive or deterrent purpose, there was no punishment. *Id.; see also Bae v. Shalala*, 44 F.3d 489, 493-95 (7th Cir. 1995)(applying *Halper* punishment test to debarment from pharmaceutical industry); *United States v. Hudson*, 14 F.3d 536, 540 (10th Cir. 1994)(applying *Halper* punishment test to debarment from banking industry); *United States v. Newby*, 11 F.3d at 1144-45 (3d Cir. 1993)(purporting to apply *Halper* in prison disciplinary context), *cert. denied*, 115 S.Ct. 111 (1994).

At least four circuits have refused to extend the *Halper* punishment test to certain other contexts. *See United States v. Stoller*, 78 F.3d 710, 717 (1st Cir. 1996)(applying totality of circumstances test—instead of *Halper* test—to indefinite bar on having any association with the banking industry); *United States v. Hernandez-Fundora*, 58 F.3d 802, 806 (2d Cir. 1995)(refusing to apply *Halper* punishment test to the prison disciplinary context), *cert. denied*, 115 S.Ct. 2288 (1995); *Garrity v. Fiedler*, 41 F.3d 1150, 1152-53 (7th Cir. 1994)(same), *cert. denied*, 115 S.Ct. 1420 (1995); *Manocchio v. Kusserow*, 961 F.2d 1539, 1541-42 (11th Cir. 1992)(holding that *Halper* analysis not applicable to administrative order barring doctor from participating in federal Medicare program and applying a totality of the circumstances test to find that the purpose of the exclusion was to protect the public).

We have cited *Hernandez-Fundora, Garrity,* and *Newby* with approval in holding that a prison disciplinary proceeding resulting in loss of good time credits and transfer to a higher security facility does not constitute a double jeopardy bar to subsequent prosecution for the same conduct, but without expressly stating that this conclusion followed from an application of *Halper* or a determination that the *Halper* test was inapplicable. *United States v. Galan*, No. 95-30491, slip op. 3412 (5th Cir. April 25, 1996).

4

employee discipline constitute punishment for double jeopardy purposes if its goal is employee deterrence? We could answer negatively for two possible reasons, either (1) even if the suspension was imposed for a deterrent, and hence under *Halper* a punitive, purpose, such employee discipline does not constitute punishment for purposes of the Double Jeopardy Clause; or (2) *Halper*'s method of defining punishment is unworkable in the context of this sort of employee discipline.[5] Because we hold that this character of employee discipline, even where it has a deterrent

---

*See also United States v. Brown*, 59 F.3d 102, 103-05 (9th Cir. 1995).

[5] *See, e.g.*, *Kurth Ranch*, 114 S.Ct. at 1948 (unworkable in tax context); *see also Bennis v. Michigan*, 116 S.Ct. 994, 1000 (1996) (noting that civil forfeiture serves a deterrent purpose "distinct from any punitive purpose"). Two circuits have held that specific government-imposed employee discipline failed to trigger double jeopardy protection. *See United States v. Payne*, 2 F.3d 706 (6th Cir. 1993); *United States v. Reed*, 937 F.2d 575 (11th Cir. 1991). The *Reed* Court distinguished *Halper* by noting that it is the rule for a rare case, and *Payne* relied exclusively on *Reed*. *Payne*, 2 F.3d at 710-11; *Reed*, 937 F.2d at 577. The defendant-appellants in both *Reed* and *Payne* were postal employees who were disciplined for on-the-job misfeasance. *Payne*, 2 F.3d at 707-08; *Reed*, 937 F.2d at 575-76. The *Reed* Court held that the employee's suspension served the "legitimate nonpunitive governmental objective[]" of vindicating the government's contract rights under the collective bargaining agreement. *Reed*, 937 F.2d at 578. It then went on to note that allowing employee disciplinary actions to constitute punishment under the Double Jeopardy Clause could lead to the "absurd result" of law-breaking employees forum-shopping (i.e. trying to get disciplined as an employee to avoid criminal prosecution). *Id.*

The implicit holding behind the explicit one in *Reed* is that governmental employer discipline is not necessarily punitive even if the discipline itself is intended to deter employee behavior. Once this is recognized, it is clear that *Reed* is no longer following the *Halper* method of defining punitive. *See id.* at 577-78 (failing to mention punitive goal of deterrence). Thus, we read these cases as authority for refusing to employ the *Halper* method for defining punitive to include all deterrent-based employee discipline.

5

purpose, is not punishment under the Double Jeopardy Clause, we need not determine whether the *Halper* method for defining punishment would be appropriate in this context.

The Double Jeopardy Clause is a "restraint on governmental power." *United States v. Sanchez-Escareno*, 950 F.2d 193, 197 (5th Cir. 1991), *cert. denied* 113 S.Ct. 123 (1992). "In order for the Double Jeopardy Clause to have any application, there must be actions by a sovereign, which place an individual twice in jeopardy. The Double Jeopardy Clause does not apply to actions involving private individuals." *United States v. Beszborn*, 21 F.3d 62, 67-68 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 330 (1994). Thus, we have applied the *Halper* punishment test to civil sanctions imposed by the government when acting in its capacity as sovereign. *E.g.*, *Perez*, 70 F.3d at 348 (property forfeiture); *United States v. Tilley*, 18 F.3d 295, 298-301 (5th Cir. 1994)(forfeiture of illegal drug proceeds), *cert. denied* 115 S.Ct. 574 (1994); *Woods*, 949 F.2d at 176 (placing an entity in receivership); *see also Sanchez-Escareno*, 950 F.2d at 200 (noting that *Halper* punishment test would apply to civil fines). And we have declined to apply the *Halper* punishment test to civil sanctions imposed by a governmental entity, the Resolution Trust Corporation, acting in its "unique non-governmental role" as receiver of failed financial institution—instead of in its role as sovereign. *Beszborn*, 21 F.3d at 68 (holding Double Jeopardy Clause inapplicable); *see also United States v. Heffner*, Nos. 95-50396 and 95-50397, slip op., at *4, 1996 WESTLAW 277405 (9th Cir. May 28, 1996) (adopting *Beszborn*

6

reasoning).  Thus, if the government was acting in a role other than as sovereign in its suspension of Reyes, and was doing no more than a typical private employer generally could lawfully do without invoking the machinery of the sovereign, we will not apply the *Halper* test because the Double Jeopardy Clause is inapplicable.

There is ample support for constitutionally distinguishing government acting as employer from government acting as sovereign. This Court has noted that "[t]he role of the Government as an employer toward its employees is fundamentally different from its role as sovereign over private citizens generally." *Bush v. Lucas*, 647 F.2d 573, 576 (5th Cir. 1981), *aff'd by* 103 S.Ct. 2404 (1983). The Supreme Court has differentiated between governmental actions taken as sovereign and as employer.  In *Connick v. Meyers*, 103 S.Ct. 1684, 1690 (1983), for example, the Court made it clear that the First Amendment did not protect governmental employees from even unreasonable adverse employment actions based on speech unrelated to a public concern.  Although the government acting in its role as sovereign may not punish a private citizen for speech it dislikes, the government acting as employer may punish its employees for the same speech if it is not of public concern. *See id*.  Similarly, governmental searches and seizures are held to a less stringent standard under the Fourth Amendment when conducted in the government's role as employer than when made in its role as sovereign.  *See O'Connor v. Ortega*, 107 S.Ct. 1492, 1500-02 (1987)(plurality opinion)(rejecting the requirement of probable cause, which is necessary for searches as sovereign, and applying

7

a reasonableness standard to governmental employer's search); *see also National Treasury Employees Union v. Von Raab*, 109 S.Ct. 1384, 1393-94 (1989)(noting that certain forms of public employment diminish expectations of privacy and subject governmental employees to routine personal searches).

We recognize that the government even in its capacity as employer is nevertheless subject to certain constitutional restrictions that are inapplicable to the private employer.  For example, the governmental employer is constitutionally prohibited from discriminating on grounds of race.  Likewise, the governmental employer is subject to certain constitutional due process restrictions in terminating employees having a property interest in their positions, restrictions that are not constitutionally imposed on the private employer.  *See Cleveland Board of Education v. Loudermill*, 105 S.Ct. 1487 (1985).  There are, of course, other examples.  *See, e.g., Von Raab; Ortega*.  These restrictions, however, protect the governmental employee from certain adverse employment actions by his employer, they do not involve any characterization of such adverse actions as "punishment."  If these restrictions are transgressed, the employee's remedy is to have the adverse action set aside, or to assert a cause of action under *Bivens v. Six Unknown Named Agents*, 91 S.Ct. 1999 (1971), it is not to preclude subsequent criminal prosecution for the same conduct.[6] The interests these restrictions protect are not the same as or

---

[6]     Reyes never contested or challenged his suspension.  *Cf. United States v. Schinnell*, Nos. 94-11155 & 95-10213, slip op. 3075 (5th Cir. April 9, 1996).

8

even remotely analogous to the interests that the Double Jeopardy Clause protects. We conclude that these constitutional restrictions on governmental action in its capacity as an employer are not a persuasive basis on which to hold that "punishment" for Double Jeopardy Clause purposes embraces adverse employment action taken by the government in its capacity as employer, rather than as sovereign, particularly where, as here, the action is of a kind a typical private employer generally could lawfully take without invoking the machinery of the sovereign. To construe the Double Jeopardy Clause to include this sort of employee discipline as "punishment" would confer on governmental employees rights against subsequent criminal prosecution—certainly the central thrust of the Double Jeopardy Clause—that private employees do not have. Such unequal protection from criminal prosecution is inconsistent with all our traditions.

We also note that the Framers' intent does not support reading the Double Jeopardy Clause to prohibit a criminal prosecution because such employee discipline has been meted out by a governmental employer. Courts may look to the common law to determine what the Double Jeopardy Clause means by "punishment." *See Ex parte Lange*, 85 U.S. 163, 170 (1873)(noting that salutary principles of common law have been embodied in the Constitution); *United States v. Jenkins*, 490 F.2d 868, 873 (2d Cir. 1973)(Framers intended Double Jeopardy Clause to import common law protections into Constitution), *aff'd*, 95 S.Ct. 1006 (1975). Colonial lawyers, including the Framers, widely relied on treatises by Sir Edward

9

Coke and Sir William Blackstone for their understanding of English common law. Jay A. Sigler, *Double Jeopardy: The Development of a Legal and Social Policy* 16 (1969). According to Coke, the double jeopardy doctrine was "clearly delineated as a purely criminal concept serving as a protection against the state . . . ." *Id.* at 19. Similarly, Blackstone interpreted the double jeopardy protection to apply only to felonies. *See id.* at 20. It seems evident that neither Coke nor Blackstone envisioned employee discipline as falling under the protection of double jeopardy. Furthermore, the discussions in the House regarding the wording of the Double Jeopardy Clause only considered actions by the government as sovereign. *Id.* at 30 (citing 1 *Annals of Cong.* 753). And the Senate initially adopted a clause applying only to "public prosecution." *Id.* at 31. Though the "public prosecution" language was dropped, neither the common law nor the legislative debates lead us to believe that the Framers conceived of governmental employee discipline as falling within the scope of the clause.

Reyes conceded at oral argument that the Double Jeopardy Clause does not apply to governmental employee discipline that is imposed for work-related misconduct. He argues, however, that governmental employer sanctions imposed for non-work-related conduct do trigger double jeopardy protections. Even if we interpret this argument as one that the government acts as sovereign (instead of as an employer) when it sanctions its employees for off-duty behavior, Reyes' constitutional claim still must fail.

10

The government was not able to suspend Reyes because it is sovereign; it was able to, and actually did, suspend him because it is his employer. The government acts as sovereign when it uses powers over which it has a monopoly. Generally speaking, any private employer could have suspended him for the same conduct and could have done so without invoking the machinery of the sovereign. *See Oil Chem. Atomic Workers Int'l Union, Local No. 4-228 v. Union Oil Co.*, 818 F.2d 437, 441 (5th Cir. 1987)(rejecting argument that discharge of private employee for off-duty/off-premises illegal drug sales is an impermissible extension of employer's power over its employees); *see also Bonet v. United States Postal Serv.*, 712 F.2d 213 (5th Cir. 1983)(upholding discharge of postal worker based on charges of sexually indecent conduct with his minor stepdaughters). In temporarily suspending Reyes from its employment, the government acted in its capacity as his employer and exercised power that a private person (*i.e.* non-sovereign) could have used. For this reason, we reject Reyes' invitation to hold that a governmental employer's suspension from its employment without pay of one of its employees constitutes punishment under the Double Jeopardy Clause if that action is taken on account of the employee's non-work-related conduct.[7]

---

[7] This is one of those instances where, despite the absence of a relatively recent "spotted horse" case, our judicial intuition—or common sense—tells us that the result is foreordained. Often in such situations it is preferable to simply announce the conclusion, rather than to attempt to explicate its doctrinal basis. Sometimes, however, the latter exercise serves as useful check on potentially erroneous or simply reflexive intuition, particularly where some of the contextual principles appear to be in at least moderate flux. With these considerations in mind, we have written at some length on what others might consider to be a question with an obvious and simple answer.

**Conclusion**

For the foregoing reasons, we AFFIRM the denial of motion to dismiss the indictment and REMAND to the district court for trial on the merits.[8]

---

[8]    After the foregoing opinion was prepared and circulated, the Supreme Court handed down its opinion in the consolidated cases of *United States v. Ursery* and *United States v. $405,089.23 In United States Currency*, Nos. 95-345 & 95-346, June 24, 1996, 1996 WL 340815 (US), holding that certain contested "*in rem* civil forfeitures" under 21 U.S.C. § 881(a)(6) & (7) and 18 U.S.C. § 981(a)(1)(A) were "neither 'punishment' [of the contesting owner of the forfeited items] nor criminal for purposes of the Double Jeopardy Clause."  The *Ursery* opinion is not directly on point, as it gives heavy emphasis to the *in rem* nature of the forfeitures there at issue, and distinguishes *Halper* and *Kurth Ranch* largely because those cases involved *in personam* proceedings. Nevertheless, *Ursery* certainly cautions against an expansive reading of the Double Jeopardy Clause and reinforces our conclusion that it is not implicated here.  For example, *Ursery* cites with approval the passage in *Gore v. United States*, 78 S.Ct. 1280, 1284 (1958), which includes the reference to "double jeopardy" as a provision "which is rooted in history and is not an evolving concept." *Ursery* at *8.  Also, *Ursery* refers to the line of cases exemplified by *Halper* as involving "potentially punitive *in personam* civil penalties such as fines," *id*. at *8, a description wholly consistent with the idea that a necessary, albeit not always sufficient, attribute of "punishment" for double jeopardy purposes is that it have been exacted by the government in the exercise of its sovereign coercive powers. Finally, we observe that *Ursery* plainly indicates that merely because a sanction may have a deterrent purpose does not necessarily mean that it is a punishment for double jeopardy purposes, particularly where it "has not historically been regarded as punishment," *id*. at *16, as is certainly the case with the employee suspension here.