**The STATE of Texas, Appellant,**

v.

**Matthew AKIN, Appellee.**

**NUMBER 13–15–00076–CR**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Delivered and Filed February 4, 2016

Mark Skurka, District Attorney, A. Cliff Gordon, Assistant District Attorney, Corpus Christi, TX, for Appellant.

John Lamerson, Lamerson Law Firm, Corpus Christi, TX, for Appellee.

Before Chief Justice Valdez and Justices Rodriguez and Benavides

## OPINION

Opinion by Justice Rodriguez

A grand jury indicted appellee Matthew Akin for injury to a disabled individual, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.04 (West, Westlaw through 2015

R.S.). In response, Akin filed a combined application for writ of habeas corpus and motion to dismiss the indictment. Akin noted that a prior administrative hearing on the same conduct found he committed no wrongdoing, and argued that this hearing triggered double jeopardy and collateral estoppel so as to bar the subsequent felony prosecution. The trial court agreed and dismissed the indictment.

By two issues, the State argues that an administrative hearing concerning Akin's employment grievance is insufficient to trigger double jeopardy or to collaterally estop a felony prosecution. Because we agree with the State, we reverse and remand.

## I. BACKGROUND

It is alleged that on June 3, 2014, Akin slapped a disabled resident ("the Resident") at the Corpus Christi State Supported Living Center where Akin was employed. Matthew Baird of the Department of Family and Protective Services ("DFPS") opened an investigation into the incident. According to Baird's report on the matter, he conducted fourteen interviews and reviewed video and a variety of medical records. Baird found the allegations to be "substantiated." On July 7, Baird forwarded a copy of his complete report to the Nueces County District Attorney with a recommendation for an indictment under Texas Penal Code section 22.04 for injury to a disabled individual.

More specifically, Baird's report disclosed the following: Treatment records showed that the Resident had mild mental disabilities and a pattern of kleptomania. Among the fourteen interviews, Baird spoke with Krishunda Armstead and Alex Granados, two fellow employees of the facility, as well as "J," another resident of the facility. Armstead and Granados reported that on the date of the alleged incident, Akin discovered the Resident was once again in possession of several items that appeared to have been stolen from other residents. They witnessed Akin slap the Resident, and after returning a stolen jacket to J, Akin told J to hit him as well. J told Baird that he did so "in fear of reprisals from Akin." Granados reported the incident to an anonymous hotline. Akin was terminated from employment for physically and verbally abusing the Resident, in violation of Texas Administrative Code chapter forty, section 3.301.

On August 13, 2014, Akin filed an employment grievance pursuant to "Chapter 13 of the Health and Human Services (HHS) Human Resources Manual." HHS held a hearing presided over by an administrative law judge. The HHS report showed that parties to the HHS hearing included Akin, who was represented by counsel, and Department of Aging and Disability Services ("DADS"), the state agency responsible for the facility where Akin worked. Neither DFPS nor any other government agency appeared at the hearing. Granados, Armstead, and J did not testify at the hearing. According to the HHS report, "One of these witnesses no longer works at the facility and did not appear at the hearing. The other witness, Mr. Granados, is still employed by the facility and was instructed to attend the hearing, but he did not appear and repeated attempts to ascertain his whereabouts failed." No other residents who witnessed or participated in the alleged incident appeared at the hearing, and no explanation was given for their absence. As a result, on November 5, 2014, HHS found that the allegations of abuse were "not confirmed" and ordered that Akin be reinstated.

On the following day, the grand jury indicted Akin for injury to a disabled individual. Akin filed a combined application

for habeas relief and motion to dismiss the indictment, claiming that the HHS hearing triggered double jeopardy and collateral estoppel so as to bar the subsequent felony prosecution. The trial court agreed, dismissed the indictment, and then dismissed the case. The State appealed.

## II. Preservation of Error

■ As a preliminary matter, Akin argues that the State did not preserve its issues for our review. *See* Tex.R.App. Proc. 33.1. Akin emphasizes that after he filed his application for writ of habeas corpus, the State did not file a formal written response. Akin further contends that when the State presented oral argument at the hearing on the matter, the State did not press any of the arguments that it raises on appeal.

Akin's argument has no merit. On appeal, the State presents essentially the same arguments that it raised in oral argument at the habeas hearing. The State's oral argument properly informed the trial judge of the basis of its argument, gave opposing counsel the opportunity to respond, and gave the judge the opportunity to rule. See *Resendez v. State*, 306 S.W.3d 308, 312 (Tex.Crim.App.2009); *State v. Mercado*, 972 S.W.2d 75, 77 (Tex.Crim. App.1998). The State thus satisfied the purpose of our error-preservation rules. See *Resendez*, 306 S.W.3d at 312.

■ Akin cites no authority, and we find none, which suggests that oral argument is insufficient or that the State must argue the issue of double jeopardy in writing. Rather, once the application for habeas relief has been filed, the only obligatory responsive filing is the "return"—a document which is only required to contain basic information meant to confirm the existence and facial validity of the criminal complaint or conviction for which the person is held in custody. *See* Tex.Crim. Proc.

Code Ann. arts. 11.29–.30 (West, Westlaw through 2015 R.S.). The code of criminal procedure contemplates that this basic return information may best be completed by an officer of the law rather than an attorney making legal arguments. *See id.* art. 11.28. Beyond the return, it is the applicant's burden to show that despite the facial validity of the complaint or conviction, it is nonetheless invalid because double jeopardy applies. *Ex parte Culver*, 932 S.W.2d 207, 212 (Tex.App.—El Paso 1996, pet. ref'd). The applicant may carry or fail to carry this burden on his own, without any argument from the State.

Because we conclude that the State properly preserved its issues for our review, we address the State's issues in full.

## III. Collateral Estoppel and Double Jeopardy

Akin moved to dismiss the indictment, citing collateral estoppel and double jeopardy. The trial court granted this motion without specifying grounds. By one issue which we construe as two, the State argues that neither collateral estoppel nor double jeopardy applies to the case at hand, and that the trial court therefore erred in dismissing the indictment and, subsequently, the case.

■ We begin by generally outlining the current state of the law concerning these doctrines. Double jeopardy and collateral estoppel are related, but distinct in terms of the relief they offer. *Ex parte Watkins*, 73 S.W.3d 264, 268 (Tex.Crim. App.2002). Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex.Crim.App.2007). By contrast, double jeopardy is most common-

ly associated with forms of relief that bar the prosecution of a suit entirely. *Ex parte Watkins,* 73 S.W.3d at 268. Thus, double jeopardy most often bars any retrial of a criminal offense, while collateral estoppel bars any retrial of specific and discrete facts that have been fully and fairly adjudicated. *Id.* at 267. For this reason, double jeopardy is sometimes called "claim preclusion," while collateral estoppel is called "issue preclusion." [1]

## A. Standard of Review

 Appellate courts review *de novo* applications of law to facts that do not involve determinations of credibility and demeanor. *Stevens,* 235 S.W.3d at 740. A decision to apply collateral estoppel is a question of law, applied to the facts, for which *de novo* review is appropriate. *Id.*

 Likewise, double jeopardy raises a legal issue of constitutional dimensions; we review *de novo* a trial court's disposition on double jeopardy grounds. *See United States v. Arreola–Ramos,* 60 F.3d 188, 191 (5th Cir.1995); *Ex parte Peralta,* 87 S.W.3d 642, 645 (Tex.App.—San Anto-

nio 2002, no pet.); *Mitchell v. State,* 963 S.W.2d 532, 536 (Tex.App.—Tyler 1996), *aff'd sub nom. Ex parte Mitchell,* 977 S.W.2d 575 (Tex.Crim.App.1997).

## B. Collateral Estoppel

 In what we construe as its first issue, the State argues that collateral estoppel does not apply to this case because DADS, the agency which employed Akin and participated in his HHS grievance hearing, is not the same party as the district attorney for purposes of collateral estoppel.

 Generally, there "is no bright-line or black-letter law that can resolve the issue of when collateral estoppel applies" to bar criminal prosecution. *Murphy v. State,* 239 S.W.3d 791, 796 (Tex.Crim.App. 2007). However, where a criminal defendant seeks to assert collateral estoppel based upon a prior administrative hearing, the defendant must at a minimum show the following elements: (1) that the prior administrative proceeding was a "full hearing" at which the parties had an opportunity to thoroughly and fairly litigate the

---

1. A third term, "res judicata," also appears in the cases dealing with the preclusive effect of final judgments. However, usage of this term is somewhat inconsistent. Sometimes the term is used to denote only claim preclusion, just as in traditional applications of double jeopardy. *See Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.,* 837 S.W.2d 627, 628 (Tex.1992). In this sense, res judicata operates to prevent the relitigation of an entire claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Id.* In other instances, the term res judicata is used as a generic term that signifies "a group of related concepts concerning the conclusive effects given final judgments." *Id.* This general usage of the term res judicata encompasses both claim preclusion and issue preclusion. *See id.*

It is this latter, general sense of res judicata that appears to be used most often in the

lexicon of the Texas Court of Criminal Appeals. This becomes critical for our analysis, because both parties rely upon the key case of *Ex parte Doan,* 369 S.W.3d 205 (Tex.Crim. App.2012); the majority in *Doan* exclusively used the term res judicata without clarifying which meaning was intended. However, in a concurrence, Justice Johnson clarified the majority's holding: "This Court granted review on a single ground: The Court of Appeals erred in holding that the Brazos County Attorney and the Travis County Attorney were not the same parties for *collateral estoppel* purposes." *Id.* at 213 (Johnson, J., concurring) (emphasis added). Likewise, Justice Womack, whose writing has guided the court of criminal appeals' treatment of this topic, has stated "Res judicata encompasses claim preclusion and issue preclusion." *York v. State,* 342 S.W.3d 528, 553 (Tex.Crim.App. 2011) (Womack, J., concurring).

ultimate fact issue; (2) which resulted in a valid and final judgment; (3) the ultimate fact issue must be the precisely the same in both proceedings; (4) the factfinder must have acted in a judicial capacity; and (5) that the government entities pursuing the cases were either the same party or a party in privity for purposes of collateral estoppel. *State v. Aguilar*, 947 S.W.2d 257, 259–60 (Tex.Crim.App.1997) (interpreting *Ex parte Tarver*, 725 S.W.2d 195, 199 (Tex.Crim.App.1986)); *see Ex parte Doan*, 369 S.W.3d 205, 207 (Tex.Crim.App. 2012) (discussing "same party" element); *Murphy*, 239 S.W.3d at 795–96 (discussing need for "precisely" the same ultimate fact); *State v. Henry*, 25 S.W.3d 260, 262 (Tex.App.—San Antonio 2000, no pet.) (discussing need for final judgment).

 To determine whether another branch of the Texas government may be considered the same as or in privity to a prosecuting authority for purposes of collateral estoppel, the test is whether or not, in the earlier proceeding, the representative of the government had the authority and capability to represent the interests of the district attorney in a final adjudication on the merits. *See Ex parte Doan*, 369 S.W.3d at 207 & 212; *Reynolds v. State*, 4 S.W.3d 13, 15 (Tex.Crim.App.1999) (adopting J. Womack's concurrence on this issue in *State v. Brabson*, 976 S.W.2d 182, 188 (Tex.Crim.App.1998) (Womack, J., concurring)).

To argue this "same party" issue, both Akin and the State principally rely on *Ex parte Doan*, 369 S.W.3d at 206. In *Doan*, a defendant's theft triggered consecutive proceedings. *Id.* First, the Brazos County Attorney unsuccessfully sought to revoke defendant's community supervision. *Id.* Then the Travis County Attorney sought to prosecute defendant on a charge of misdemeanor theft. *Id.* The defendant argued that the first proceeding triggered

collateral estoppel so as to bar the State from bringing a subsequent misdemeanor prosecution based on the same conduct. *Id.* On appeal, the *Doan* court considered whether the State's representative in the Brazos revocation hearing had sufficient authority and capability to represent the interests of the Travis County prosecutor. *Id.* at 207 & 212. The court observed that there are few substantial differences between a Texas criminal trial and a Texas community-supervision revocation proceeding:

> In Texas [community-supervision revocation proceedings], the State is represented by a prosecutor, the defendant does have a right to counsel, the hearing is before the judge, formal rules of evidence do apply, and there may be appeal directly to a court of appeals. They are conducted entirely within the judicial branch. The Rules of Evidence and the exclusionary rule to bar illegally seized evidence apply fully in a Texas probation revocation hearing. Indeed, aside from the burden of proof required to prove a community-supervision violation (preponderance of the evidence …) there are few procedural differences between a Texas criminal trial and a Texas community-supervision revocation proceeding.

*Id.* at 210. Because of the strong similarities to a true criminal proceeding in terms of the issues, procedures, and potential punishment involved, the court reasoned that the prosecuting authority for the revocation hearing had the authority and capability to represent the same state interests as the misdemeanor prosecuting authority. *See id.* at 212–13. Based on this authority and capability, the *Doan* court concluded that the Brazos and Travis County Attorneys were the same party for the purpose of collateral estoppel. *Id.* at 206.

■ From *Doan* and its predecessor *Ex parte Tarver*, we are able to glean several considerations to help determine whether the former proceeding meets this authority-and-capability test: whether it is conducted before a trial judge or an administrative agency, *Ex parte Doan*, 369 S.W.3d at 210; whether formal rules of evidence are in force, *id.*; whether the defendant has the right to counsel, and whether the state agency is represented by a prosecutor, *id.*; whether it is procedurally similar to a criminal matter, *id.*; the applicable burden of proof, *id.*; and the severity of the potential punishment or result. *See id.* at 212 (describing the State's primary interest as "criminal punishment"); *Ex parte Tarver*, 725 S.W.2d at 197 & 200 (speaking of whether a probation revocation hearing could result in punishment severe enough to resemble a second criminal "conviction").

Here, while the record is thin, it shows that the present case does not satisfy the "same party or a party in privity" element of collateral estoppel. First, the HHS hearing was convened and decided by an administrative law judge who was employed at will by a state agency, rather than an elected trial judge with the full procedural power of a Texas court. *Compare* Tex. Gov't Code Ann. § 21.001 (West, Westlaw through 2015 R.S.) ("A court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders") *with id.* § 2003.041 (West, Westlaw through 2015 R.S.) (describing ALJ "employment").

Second, the record shows that the stakes of the HHS proceeding were only that Akin might be reinstated to his former position. This does not resemble the full gravity of a criminal matter so as to give any representative of the State the strongest incentive to pursue a "full and fair" hearing of the issues, as a district attorney might. *See Hudson v. United States*, 522 U.S. 93, 104, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (holding, where a financier faced occupational debarment, that this resembled civil relief rather than a criminal penalty).

Third, the record indicates that a less rigorous procedure was employed in the HHS hearing. For instance, while the DFPS's initial investigation involved fourteen witness interviews, the HHS factfinder noted that counsel for DADS was unable to introduce a single witness to substantiate the charges against Akin. This suggests limited procedural power to secure the participation of key witnesses, compared to criminal procedure. *See* Tex.Crim. Proc.Code Ann. art. 24.01 *et seq.* (West, Westlaw through 2015 R.S.).

But on the whole, the record contains little direct evidence regarding any of these factors. The record shows that DADS was represented by counsel, but gives us no suggestion as to the role DADS was to play: a prosecutor attempting to show Akin's wrongdoing, a neutral representative, or a defense-oriented advocate whose interests, like Akin, lay in disproving the allegations so as to protect DADS from liability.

Likewise, the factfinder conducted the HHS proceeding under the procedural and evidentiary guidelines of the "the provisions of Chapter 13 of the Health and Human Services (HHS) Human Resources Manual." However, the handbook appears nowhere in the appellate record, and ergo, we have no indication as to the framework or standard of review it entails. We agree with the State that it was Akin's burden to produce a complete record on this account, since it was Akin's burden in the trial court to substantiate the "same party or a party in privity" element of collateral estoppel. *See Murphy v. State*, 239 S.W.3d

791, 795 (Tex.Crim.App.2007); *see also Ex parte Culver*, 932 S.W.2d at 212.

What we do have is a memorandum opinion which summarizes some procedural aspects of this manual as it existed in 2008:

> Guajardo initiated a grievance pursuant to chapter 13 of the HHS Human Resources Manual challenging the termination of her employment. Chapter 13 provides that most full-time, regular status employees of agencies within the HHS system have the right to file a grievance if they have disciplinary action taken against them by their agency. The chapter describes the "recourse employees have when disciplinary actions are taken, the procedures for filing a grievance, and the grievance process." Pursuant to the procedure set forth in the chapter, properly filed grievances are referred to an administrative law judge from the Commission's appeals division for a hearing and, at the hearing, *formal rules of evidence do not apply, hearsay evidence may be accepted,* and section (f) of chapter 13 expressly provides that the decision of the administrative law judge is "final and binding on the parties."

*Tex. Health and Human Serv. Comm'n v. Guajardo*, No. 03–09–00521–CV, 2010 WL 5129111, at *1 (Tex.App.—Austin Dec. 14 2010, no pet.) (mem. op., not designated for publication) (emphasis added). The absence of formal rules of evidence only cements the conclusion that even if DADS' interests lay in showing Akin's guilt, the HHS hearing would have given DADS neither the procedural heft nor the punitive power to vindicate the State's interests in prosecuting crime. *See Ex parte Doan*, 369 S.W.3d at 212.

We conclude that DADS did not have the authority or capability to represent the interests of the district attorney in a final adjudication on the merits at the HHS hearing. *See id.* at 210; *Brabson*, 976 S.W.2d at 188. As such, Akin's collateral estoppel claim fails on the element of "same party or party in privity." *See Ex parte Doan*, 369 S.W.3d at 210. We conclude that the trial court erred to the extent that it dismissed Akin's indictment on grounds of collateral estoppel.

We sustain the State's first issue.

## C. Double Jeopardy

In what we construe as its second issue, the State contends that double jeopardy does not apply to the facts of this case. The State argues that the trial court thus erred to the extent that its order of dismissal was based on double jeopardy.

The constitutional proscription against double jeopardy provides three types of protection: 1) protection against a second prosecution for the same offense after an acquittal; 2) protection against a second prosecution for the same offense following a conviction; and 3) protection against multiple punishments for the same offense. *Speights v. State*, 464 S.W.3d 719, 722 (Tex.Crim.App.2015). Akin argues that the HHS hearing constituted a first prosecution for the conduct in question and reasons that his felony indictment is thus barred as a second prosecution.

However, in order to trigger double jeopardy, the first proceeding must be "essentially criminal" in nature. *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The risk to which the double jeopardy clause refers is not present in proceedings that are not "essentially criminal." *Id.*; *Helvering v. Mitchell*, 303 U.S. 391, 398, 58 S.Ct. 630, 82 L.Ed. 917 (1938).

To argue that the HHS hearing meets this "essentially criminal" test, Akin cites two cases concerning probation-revocation

hearings. *See Ex parte Doan,* 369 S.W.3d at 207; *Ex parte Tarver,* 725 S.W.2d at 199. According to Akin, these cases show that any· administrative proceeding may trigger double jeopardy where the conduct at issue in the hearing is also subject to criminal penalty—i.e. because the conduct at issue in the administrative hearing is essentially criminal, double jeopardy · is triggered.

The Supreme Court has specifically rejected this "same-conduct" test for determining when double jeopardy applies. *See United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). And Akin's reliance on *Tarver* and *Doan* to argue for double jeopardy is misplaced, for neither opinion found that double jeopardy applied. *See Ex parte Doan,* 369 S.W.3d at 212 n.33.[2]

 Rather, double jeopardy will not bar a second proceeding unless the first proceeding itself, not just the conduct at issue, is essentially criminal. *Breed,* 421 U.S. at 528, 95 S.Ct. 1779. To determine whether a proceeding is essentially criminal, courts pursue a two-step analysis. *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). In the first step, the reviewing court must determine whether the legislature, in establishing the penalizing mechanism, intended the penalty to be either criminal or civil in nature. *Id.* (citing *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 236–37, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972)). To gauge this intention, we review the statutory language used to describe the penalty for signs of express legislative intent, *id.* and also review the procedures that the statute prescribes for administering the penalty for signs of im-

plied intent. *See Helvering,* 303 U.S. at 402, 58 S.Ct. 630 (1938) ("That Congress provided a distinctly civil procedure for the collection of the [monetary penalty] indicates clearly that it intended a civil, not a criminal,·sanction.").

Here, the relevant sections·of the administrative code contain no indication of legislative intent on this subject. *See* 40 TEX. ADMIN. CODE §§ 3.301–06 (West, Westlaw through 2015 R.S.). However, section 3.301 can be read as incorporating, by reference, chapter 711 of the administrative code, which also deals with hearings on misconduct in DADS facilities. *See id.* § 3.301(a) ("Abuse, neglect, and exploitation have the meanings and classifications assigned in Chapter 711 of this title (relating to Investigations in DADS Mental Retardation and DSHS Mental Health Facilities and Related Programs)"). Chapter 711 contains strong indicators that such investigations are civil in nature. *See, e.g., id.* § 711.1427 ("The hearing is similar to a civil court trial, but is less formal."). Second, chapter 711 states that "if a criminal case against the employee arises because of the same reportable conduct, DFPS may postpone the [administrative] hearing until the criminal case resolves." *Id.* § 711.1421. · This consecutive-hearing scheme would not be· workable if the DADS administrative proceeding was "essentially criminal" so as to trigger·double jeopardy problems.

In light of this statutory scheme, we conclude that the legislature intended the HHS hearing and any sanction that may result as civil, rather than criminal, in nature. *See Tharp .v. State,* 935 S.W.2d 157, 161 (Tex.Crim.App.1996) (relying upon "the civil aspects of the administra-

**2.** Indeed, the *Doan* majority noted that *Tarver* expressly found that double jeopardy did not apply, and construed *Tarver* as a strictly non-constitutional collateral estoppel case that merely touched upon the same. policies and "risks" as the double jeopardy clause. *See Ex parte Doan,* 369 S.W.3d at 212 n. 33.

tive license revocation statute and procedure" to determine that an administrative driver's-license revocation hearing was not "punishment" for double jeopardy purposes).

We proceed to the second step of the "essentially criminal" analysis and inquire whether, despite the legislature's intention to establish a civil penalty, the statutory scheme is so punitive either in purpose or effect as to negate that intention. *Ward*, 448 U.S. at 248–49, 100 S.Ct. 2636. Only the "clearest proof" of punitive character will "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 104, 118 S.Ct. 488. In this second step, we assess the potential repercussions as viewed through the lens of a multi-factor test:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned[.]

*Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) (internal citations omitted).

Based upon the foregoing, it is clear that the stakes involved in Akin's employment grievance did not rise to a level that would override legislative intent and qualify as criminal punishment. Akin did not face possible "disability or restraint" in the traditional sense of a prison term, regardless of the hearing's outcome. *See Hudson*, 522 U.S. at 104, 118 S.Ct. 488.

As to historical regard for termination, "revocation of a privilege voluntarily granted," such as termination and even debarment, is characteristically free of the punitive criminal element. *Helvering*, 303 U.S. at 399 & n. 2, 58 S.Ct. 630. And far from serving the criminal purposes of deterrence and retribution, the primary purpose of termination was more in line with a traditional, remedial form of civil relief: preserving the status quo by protecting vulnerable members of the public (the residents of the facility) from harm. *See Tharp*, 935 S.W.2d at 159.

The fact that the same conduct is subject to criminal prosecution is of less significance in light of recent Supreme Court jurisprudence. *See Dixon*, 509 U.S. at 704, 113 S.Ct. 2849 (rejecting the "same-conduct" test for double jeopardy purposes). Indeed, the fact that the same conduct is also subject to felony prosecution seems to show that a simple firing is by no means "excessive in relation to the alternative purposes assigned." *See Kennedy*, 372 U.S. at 168–69, 83 S.Ct. 554.

The only contrary factor is that the HHS proceeding involved a violation that requires a showing of scienter. *See* 40 Tex. Admin. Code § 711.11 (West, Westlaw through 2015 R.S.) ("[P]hysical abuse is defined as: an act or failure to act performed knowingly, recklessly, or intentionally . . . ."). This factor, by itself, is far from enough to qualify the HHS hearing as criminal. *See Hudson*, 522 U.S. 93, 104, 118 S.Ct. 488 (1997) (finding one factor insufficient to outweigh several contrary factors).

Even if an employment action were punitive in purpose, we would not necessarily be persuaded that Akin's position has merit. The double jeopardy clause does not embrace "adverse employment action taken by the government in its

capacity as employer, rather than as sovereign, particularly where, as here, the action is of a kind a typical private employer generally could lawfully take." *United States v. Reyes,* 87 F.3d 676, 680–81 (5th Cir.1996). To hold otherwise would "confer on governmental employees constitutional rights against subsequent criminal prosecution that private employees do not have." *Id.* at 681.

In light of the above analysis, we conclude that the HHS hearing was not "essentially criminal" so as to trigger double jeopardy. Thus, the trial court erred to the extent that it dismissed the indictment based on double jeopardy.

We sustain the State's second issue.

## IV. CONCLUSION

We reverse and remand for proceedings consistent with this opinion.