

**NUMBER 13-18-00130-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**RAMIRO GARCIA LOPEZ JR.,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                          **Appellee.**

### On appeal from the 430th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes**
**Memorandum Opinion by Justice Longoria**

Appellant Ramiro Garcia Lopez Jr. was placed on community supervision for possession of marijuana. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121. The trial court subsequently revoked his community supervision. By three issues, Lopez argues: (1) the State's second amended motion for revocation was barred by collateral estoppel

and res judicata; (2) the evidence was legally insufficient to support the revocation of his community supervision; and (3) the trial court erred by admitting inadmissible hearsay. We affirm as modified.

## I. BACKGROUND

Lopez was indicted for money laundering in an amount greater than $200,000, a first-degree felony, and possession of marijuana in an amount greater than fifty pounds but less than 2,000 pounds, a second-degree felony. *See* TEX. PENAL CODE ANN. § 34.02(e); TEX. HEALTH & SAFETY CODE ANN. § 481.121. Lopez pleaded guilty to the possession of marijuana charge. On June 16, 2014, Lopez was adjudicated guilty, was sentenced to ten years' imprisonment, and ordered to pay a $10,000 fine. Lopez's sentence was suspended, and he was placed on ten years of community supervision. The State then dismissed the money laundering charge.

On October 27, 2017, the State filed a motion to revoke Lopez's community supervision. The State alleged Lopez had committed three separate violations of his community supervision by: (1) committing the offense of alien smuggling; (2) failing to pay his monthly community supervision fee; and (3) failing to comply with the requirement for community service hours.

On November 16, 2017, Lopez moved to quash the revocation motion, alleging that the motion did not track the statutory language or provide notice of "the particular manner and means that constitute an offense." Later that day, the State filed an amended revocation motion, which was the same as the original motion except now it tracked the elements of the Texas Penal Code for smuggling of persons. *See* TEX. PENAL CODE Ann. § 20.05(a)(1)(A). The case was called in the trial court, and Lopez pleaded not true;

2

however, after two witnesses testified, the case was continued without the trial court having made any findings or rulings.

On November 20, 2017, the State filed a motion to dismiss its motion for revocation. Three minutes later, the State filed an amended motion for revocation, alleging Lopez had violated the terms of his community supervision. The allegations were identical to the allegations made in the original revocation motion except the State now alleged that Lopez violated the federal law related to alien harboring and smuggling instead of Texas law. *See* 8 U.S.C.A. § 1324. Lopez again moved to quash, alleging that the motion did not track the statutory language or provide notice of "the particular manner and means that constitute an offense." Lopez also filed a motion to dismiss the new revocation motion on double jeopardy grounds. The trial court signed an order dismissing the State's first revocation motion filed on November 16, 2017. The State then filed a new amended revocation set forth the elements of the federal law Lopez allegedly violated.

Lopez pleaded not true to all of the allegations, but following a hearing, the trial court found them all true, revoked Lopez's community supervision, and sentenced Lopez to five years' imprisonment. This appeal ensued.

## II. Collateral Estoppel

In his first issue, Lopez argues the second revocation motion filed on November 20, 2017 was barred by collateral estoppel and res judicata.

### A. Standard of Review and Applicable Law

Generally, to properly preserve issues for appeal, the issues raised on appeal must comport with the objections at trial. *See Bekendam v. State*, 441 S.W.3d 295, 300 (Tex.

3

Crim. App. 2014). "The doctrine of collateral estoppel is embodied within the constitutional bar against double jeopardy. But the two are not identical. Double jeopardy bars any retrial of a criminal offense, while collateral estoppel bars any retrial of specific and discrete facts that have been fully and fairly adjudicated." *Ex parte Watkins*, 73 S.W.3d 264, 267–68 (Tex. Crim. App. 2002). Collateral estoppel bars

> successive litigation of an issue of fact or law that is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment. If a judgment does not depend on a given determination, relitigation of that determination is not precluded. . . . A determination ranks as necessary or essential only when the final outcome hinges on it.

*State v. Waters*, 560 S.W.3d 651, 661 (Tex. Crim. App. 2018) (quoting *Bobby v. Bies*, 556 U.S. 825, 834 (2009)); *see York v. State*, 342 S.W.3d 528, 553 (Tex. Crim. App. 2011) (Womack, J., concurring) (noting that res judicata "encompasses claim preclusion and issue preclusion").

## B. Analysis

We first note that Lopez's trial court objections seemingly do not conform with the issue he raises on appeal. At the trial court level, Lopez complained solely of double jeopardy. On appeal, Lopez does not even mention double jeopardy and instead solely contends that the second motion for revocation should have been barred by res judicata and collateral estoppel. And as we stated above, double jeopardy and collateral estoppel are not identical. *State v. Akin*, 484 S.W.3d 257, 263 (Tex. App.—Corpus Christi 2016, no pet.).

However, assuming without deciding that Lopez properly preserved his complaint, we conclude the State's second motion for revocation was not barred by collateral estoppel, double jeopardy, or res judicata. In *State v. Waters*, the Texas Court of Criminal

4

Appeals analyzed how double jeopardy and collateral estoppel apply in revocation proceedings. 560 S.W.3d at 659. The *Waters* Court made the following observation concerning double jeopardy:

> [I]n a revocation proceeding, the central question is whether the probationer has violated the terms of her community supervision and whether she remains a good candidate for supervision, rather than being one of guilt or innocence of the new offense. Moreover, because guilt or innocence is not the central issue at a revocation hearing, a defendant does not face punishment for the newly alleged offense in that proceeding. As we correctly recognized in *Tarver*, any punishment she would receive as a result of the revocation hearing relates back to the original offense for which she was placed on community supervision, not to the newly alleged offense. Thus, because there is no possibility of a new conviction and punishment arising from a revocation hearing, jeopardy does not attach for any offense that is alleged as a violation of the terms of community supervision in a revocation hearing, and double jeopardy protections are inapplicable.

*Id.* Thus, the second motion for revocation could not be barred by double jeopardy implications. *See id.* The *Waters* Court continued by concluding that a subsequent motion to revoke would be barred by collateral estoppel only when facts in question in the first proceeding were "necessarily decided" and "essential to the judgment." *Id.* at 661 (concluding that the second motion for revocation was not barred by collateral estoppel even when the trial court, in the first motion for revocation, found the violation allegation as "not true" because a trial's court's determination of not true or true is not "necessary or essential" to the judgment such as to invoke collateral estoppel). For the same reasons, res judicata would not apply in this case because there were no issues or claims that were decided. *See York*, 342 S.W.3d at 553.

In the present case, the trial court never made any factual determinations or rulings on the first motion for revocation. Two witnesses testified, the case was continued, and then the State moved to dismiss without the trial court ever making a finding. Therefore,

5

the State's second motion for revocation was not barred by collateral estoppel or res judicata. *See id.* We overrule Lopez's first issue.

### III. VIOLATION OF THE CONDITIONS OF COMMUNITY SUPERVISION

In his second issue, Lopez asserts the State failed to sufficiently demonstrate that he violated one of the conditions of his community supervision.

### A. Standard of Review and Applicable Law

We review revocation of community supervision for abuse of discretion. *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Carreon v. State*, 548 S.W.3d 71, 77 (Tex. App.—Corpus Christi 2018, no pet.). To revoke a defendant's probation, the State need only prove a violation of a condition of the probation by a preponderance of the evidence. *See Hacker v. State,* 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). Preponderance of the evidence means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Id.* A single proven violation is all that is needed to affirm a trial court's order revoking a defendant's community supervision. *See Smith v. State,* 286 S.W.3d 333, 342 (Tex. Crim. App. 2009).

When reviewing an order revoking community supervision, we view all the evidence in the light most favorable to the trial court's ruling. *See Hacker,* 389 S.W.3d at 865. The trial court as fact-finder is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *See id.* Thus, if the record supports conflicting inferences, it must be presumed that the trial court resolved any such conflict in favor of its findings. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

### B. Analysis

6

Lopez challenges the sufficiency of the evidence of all three of the alleged violations. Concerning the allegation that he failed to pay his monthly supervision fees, he does not dispute that he failed to pay. Rather, he contends the State failed to demonstrate he was able to pay the fees and that his failure to do so was willful. The relative statute states:

> In a revocation hearing at which it is alleged *only* that the defendant violated the conditions of community supervision by failing to pay community supervision fees or court costs or by failing to pay the costs of legal services as described by Article 42A.301(11), the state must prove by a preponderance of the evidence that the defendant was able to pay and did not pay as ordered by the judge.

*See* TEX. CODE CRIM. PROC. ANN. art. 42A.751(i) (emphasis added). However, the clear language of the statute provides that the State only needs to prove the defendant's ability to pay when the failure to pay is the only allegation. *See id.* On the other hand, when the State alleges more than one allegation at the revocation hearing, as in the present case, the State is not required to prove the defendant had the ability to pay or that her lack to do so was willful. *See Gipson v. State*, 428 S.W.3d 107, 113 (Tex. Crim. App. 2014) (Johnson, J., concurring) ("[T]he legislature's chosen language indicates that it was aware of the considerations in revoking a defendant's community supervision and decided to make mere failure to pay a revocable offense."); *see also Farr v. State*, No. 13-17-00297-CR, 2018 WL 4017118, at *4 (Tex. App.—Corpus Christi Aug. 23, 2018, no pet.) (mem. op., not designated for publication) (same). Because the State alleged Lopez committed multiple violations of his community supervision, it was not required to prove Lopez had the ability to pay. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.751(i).

Regarding the alien smuggling allegation, Lopez only challenges the knowledge element of the offense. *See* 8 U.S.C.A. § 1324(a)(1)(A) (stating that it is illegal to

7

transport or conceal aliens if the defendant knows the individual is an alien).  In other words, he argues he "did not know of the presence of the people in the enclosed trailer nor their legal status to be in the country."  However, between 2010 and 2012, the record indicates that the State confiscated approximately 13,604 pounds of marijuana from tractor trailers belonging to Lopez.  In all three of these occasions, the marijuana was concealed in cotton seed; in two of those three instances, Lopez confessed to having knowledge of the marijuana.  Thus, the record shows that Lopez has knowingly concealed drugs in cottonseed containers in a similar fashion to how the fifteen individuals were concealed beneath cotton seed in the present case.

Additionally, according to GPS records, Lopez was at the cotton loading facility at 2:00 p.m. on October 3, 2017, when the cotton seed was loaded into the truck.  The individual who signed off on the cotton seed load initialed "R.L."  GPS data showed that the truck was driven from the cotton loading facility to Lopez's home. The GPS data indicates that the truck left Lopez's home at 2:00 a.m. the following day and did not make any stops until reaching the checkpoint in Sarita, Texas.  Border Patrol Agent Julio Rivera testified that he was on duty when he observed Lopez drive to the checkpoint.  Lopez was driving a large semi-truck; the attached container had an open top but was covered tightly by a tarp.  Rivera testified that Lopez was stopped for further inspection based on the continuous canine alerts.  Upon x-ray inspection, it was revealed that fifteen people were concealed in the container full of cotton seed.  Viewing all of the evidence in the light most favorable to the trial court's finding, we conclude there was sufficient evidence that Lopez had knowledge concerning the presence and legal status of the fifteen individuals.  *See Hacker,* 389 S.W.3d at 865.

8

Lastly, regarding the community supervision hours, Lopez argues that he had completed some of the hours and that a medical condition prevented him from completing the remainder of his community supervision hours. However, the State provided testimony showing that even though Lopez completed some of the hours, he did not complete all of the required service. Additionally, the State provided testimony showing that Lopez failed to complete his community service hours even after he received clearance from his doctor. Viewing all of the evidence in the light most favorable to the trial court's finding, there was sufficient evidence to prove that Lopez did not complete the required service hours. *See Hacker,* 389 S.W.3d at 865.

Any one of the three allegations above would have been sufficient on its own to support revocation. *See Smith,* 286 S.W.3d at 342. Therefore, the trial court did not abuse its discretion in revoking his community supervision. *See id.* We overrule Lopez's second issue.

### IV. INADMISSIBLE HEARSAY

In his third issue, Lopez argues that the trial court admitted inadmissible hearsay concerning the legal status of the individuals found in his cotton truck.

### A. Standard of Review and Applicable Law

A trial court's ruling regarding the admissibility of evidence is reviewed for abuse of discretion. *See Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). As long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it will be upheld. *See Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). Upon finding a non-constitutional error, the reviewing court will reverse only upon a finding that the error affected the

9

substantial rights of the accused. TEX. R. APP. P. 44.2(b); *see Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). Substantial rights are not affected if, based on the record as a whole, this Court has a fair assurance that the erroneous admission of evidence had either no influence or only a slight influence on the verdict. *See Whitaker v. State*, 286 S.W.3d 355, 364 (Tex. Crim. App. 2009); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In making this assessment, this Court considers everything in the record, the nature of the evidence supporting the verdict, the character of the alleged error, and how it relates to other evidence in the record. *See Motilla*, 78 S.W.3d at 355. The presence of overwhelming evidence supporting the conviction can be a factor in the evaluation of harmless error. *See id.* at 356.

In order to preserve a challenge to the trial court's admission of evidence, the complaining party must have lodged a timely and specific objection and have obtained an adverse ruling. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103. However, a party waives an objection to the admission of evidence "when other such evidence was received without objection, either before or after the complained-of ruling." *Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Reckart v. State*, 323 S.W.3d 588, 596 (Tex. App.—Corpus Christi 2010, pet. ref'd).

## B. Analysis

Lopez complains about the following exchange at trial concerning the fifteen individuals discovered in the truck:

| [Prosecutor]: | Now, when you say the fifteen bodies, what happens to—what happened to those fifteen individuals? |
|---|---|
| [Border Patrol Agent]: | They were processed accordingly and deported back to their country. |

10

[Defense Counsel]: Judge, I will object and ask the Court not to consider that answer. This is a backdoor hearsay, Judge. The only way that they would have been deported is to find out where they're from and there has been no testimony as to that, Judge. So I ask the Court to strike that portion of his testimony.

[Trial Court]: Objection is overruled.

On appeal, Lopez argues this was inadmissible hearsay and that it was harmful because "it was the closest showing that the individuals were 'aliens.'" However, identical evidence was introduced multiple times throughout the trial without any objections from Lopez. For example, Lopez did not object when Border Patrol Agent Ernesto Reyna testified, "We responded and we interviewed, my office, the office I work with, we interviewed the aliens." Lopez also did not object to the following exchange:

[State's Counsel]: Did you retrieve any type of documents related to this case from any of these, the fifteen aliens or even from the Defendant?

[Agent Reyna]: No, ma'am.

Therefore, Lopez waived his arguments concerning the testimony about the fifteen individuals' legal status because the same information was introduced through other sources.[1] *See Leday,* 983 S.W.2d at 718; *Reckart*, 323 S.W.3d at 596. We overrule Lopez's third issue.

## V. MODIFICATION TO THE TRIAL COURT JUDGMENT

Appellate courts have the power to modify the trial court judgments and affirm them as modified. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim.

---

[1] For example, Lopez's counsel made the following comment during his closing argument: "Other than that, Judge, I submit to the Court that with all the agents that have testified, certainly, there was evidence of illegal aliens, but not of Mr. Lopez having anything to do with that at least not intentionally."

11

App. 1993); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.) ("We have the authority to reform the judgment to make the record speak the truth when the matter has been called to our attention by any source."). The first page of the "Judgment Revoking Community Supervision & Sentence" reflects that Lopez pleaded true to the allegations of the violations. However, as discussed above, the record, clearly reflects that Lopez pleaded not true. Accordingly, we modify the judgment to reflect Lopez's plea of not true.

## VI. CONCLUSION

We affirm the judgment of the trial court as modified.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
6th day of June, 2019.